# SERFASS *v.* UNITED STATES

No. 73–1424.   Argued December 9, 1974—Decided March 3, 1975

*Harry A. Dower* argued the cause for petitioner. With him on the brief was *Barry N. Mosebach.*

*Edward R. Korman* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Assistant Attorney General Petersen,* and *Deputy Solicitor General Frey.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether a Court of Appeals has jurisdiction of an appeal by the United

States from a pretrial order dismissing an indictment based on a legal ruling made by the District Court after an examination of records and an affidavit setting forth evidence to be adduced at trial.

I

The material facts are not in dispute. Petitioner, whose military service had been deferred for two years while he was in the Peace Corps, was ordered to report for induction on January 18, 1971. On December 29, 1970, he requested the form for conscientious objectors, Selective Service Form 150, and after submitting the completed form to his local board, he requested an interview. Petitioner met with the local board on January 13, 1971, and thereafter he was informed by letter that it had considered his entire Selective Service file, had "unanimously agreed that there was no change over which [petitioner] had no control," and had therefore "decided not to re-open [petitioner's] file." He was also informed that he was "still under Orders to report for Induction on January 18, 1971 at 5:15 A. M." Petitioner appeared at the examining station and refused induction on January 18.

A grand jury returned an indictment charging petitioner with willfully failing to report for and submit to induction into the Armed Forces, in violation of 50 U. S. C. App. § 462 (a). At petitioner's arraignment he pleaded not guilty and demanded a jury trial. The trial date was set for January 9, 1973. Prior to that time, petitioner filed a motion to dismiss the indictment on the ground that the local board did not state adequate reasons for its refusal to reopen his file. Attached to the motion was an affidavit of petitioner stating merely that he had applied for conscientious objector status and that the local board's letter was the only communication concerning his claim which he had received. At the

same time, petitioner moved "to postpone the trial of the within matter which is now scheduled for January 9, 1973, for the reason that a Motion to Dismiss has been simultaneously filed and the expeditious administration of justice will be served best by considering the Motion prior to trial."

On January 5 the District Court granted petitioner's motion to continue the trial and set a date for oral argument on the motion to dismiss the indictment. Briefs were submitted, and after hearing oral argument, the District Court entered an order directing the parties to submit a copy of petitioner's Selective Service file. On July 16, 1973, it ordered that the indictment be dismissed. In its memorandum, the court noted that the material facts were derived from petitioner's affidavit, from his Selective Service file, and from the oral stipulation of counsel at the argument "that the information which Serfass submitted to the Board establishes a prima facie claim for conscientious objector status based upon late crystallization." [1] The District Court held that dismissal of the indictment was appropriate because petitioner was "entitled to full consideration of his claim prior to assignment to combatant training and service," and because the local board's statement of reasons for refusing to reopen his Selective Service file was "sufficiently ambiguous to be

---

[1] The District Court concluded that petitioner's defense was properly raised by motion before trial and that, although petitioner had not waived his right to trial by jury, his defense was properly to be determined by the court. Fed. Rules Crim. Proc. 12 (b)(1), (4). Compare *United States* v. *Ponto*, 454 F. 2d 657, 663 (CA7 1971), with *United States* v. *Ramos*, 413 F. 2d 743, 744 n. 1 (CA1 1969). See *United States* v. *Covington*, 395 U. S. 57, 60 (1969); *United States* v. *Sisson*, 399 U. S. 267, 301 (1970); *United States* v. *Knox*, 396 U. S. 77, 83 (1969); 8 J. Moore, Federal Practice ¶ 12.04 (2d ed. 1975).

reasonably construed as a rejection on the merits, thereby prejudicing his right to in-service review." [2]

The United States appealed to the United States Court of Appeals for the Third Circuit, asserting jurisdiction under the Criminal Appeals Act, 18 U. S. C. § 3731, as amended by the Omnibus Crime Control Act of 1970, 84 Stat. 1890.[3] In a "Motion to Quash Appeal for Lack of Jurisdiction" and in his brief, petitioner contended that the Court of Appeals lacked jurisdiction because further prosecution was prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. The Court of Appeals rejected that contention. It concluded that, although no appeal would have been possible in this case under the Criminal Appeals Act as it existed prior to the 1970 amendments,[4]

---

[2] In ordering dismissal the District Court relied primarily on *United States* v. *Ziskowski*, 465 F. 2d 480 (CA3 1972), and *United States* v. *Folino*, No. 72–1974 (CA3 June 29, 1973) (unreported).

[3] Title 18 U. S. C. § 3731 provides in pertinent part:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

. . . . .

"The provisions of this section shall be liberally construed to effectuate its purposes."

[4] Prior to the 1970 amendments, which were effective January 2, 1971, 18 U. S. C. § 3731 (1964 ed., Supp. V) authorized an appeal by the United States to a court of appeals in all criminal cases "[f]rom a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section." Under this provision, the Court of Appeals concluded, appeals "were permissible only if the dismissal of an indictment was based upon a defect in the indictment or in the institution of the prosecution, rather than upon evidentiary facts

those amendments were "clearly intended to enlarge the Government's right to appeal to include all cases in which such an appeal would be constitutionally permissible." Relying on its earlier opinion in *United States* v. *Pecora*, 484 F. 2d 1289 (1973), the Court of Appeals held that since petitioner had not waived his right to a jury trial,[5] and no jury had been empaneled and sworn at the time the District Court ruled on his motion to dismiss the indictment, jeopardy had not attached and the dismissal was an appealable order. *Pecora* had held appealable, under the present version of § 3731, a pretrial dismissal of an indictment based on a stipulation of the facts upon which the indictment was based. In this case the Court of Appeals saw "no significant constitutional difference" arising from the fact that "the instant dismissal was based upon the trial court's finding that the defendant had established a defense as a matter of law, rather than upon the finding, as in *Pecora*, that there were insufficient facts as a matter of law to support a conviction." In both cases "the pretrial motion of dismissal was based upon undisputed facts raising a legal issue and the defendant did not waive his right to a jury trial," and in both "denial of the motion to dismiss [would have] entitled the defendant to the jury trial which he ha[d] not waived." [6]

---

outside the face of the indictment which would possibly constitute a defense at trial."

[5] The Court of Appeals noted that the District Court "expressly found that [petitioner] did not waive his right to a jury trial," that the procedures for waiver required by Fed. Rule Crim. Proc. 23 (a) had not been complied with, and that simultaneously with his motion to dismiss the indictment petitioner had filed a motion to postpone the trial.

[6] In *Pecora* the Court of Appeals distinguished *United States* v. *Hill*, 473 F. 2d 759 (CA9 1972), holding unappealable the pretrial dismissal of an indictment alleging the mailing of obscene advertisements, on the grounds that in *Hill* (1) there was no determination

As to the merits, the Court of Appeals concluded that in *Musser* v. *United States,* 414 U. S. 31 (1973), this Court had "placed an abrupt end to [the] line of cases" on which the District Court relied. It held that *Musser* should be applied retroactively to registrants such as petitioner who refused induction before the case was decided, and that since petitioner's local board was without power to rule on the merits of a post-induction order conscientious objector claim, his right to in-service review was not prejudiced. Accordingly, it reversed the order of the District Court and remanded the case for trial or other proceedings consistent with its opinion.

Because of an apparent conflict among the Courts of Appeals concerning the question whether the Double Jeopardy Clause permits an appeal under § 3731 from a pretrial order dismissing an indictment in these circumstances, we granted certiorari. Petitioner did not seek review of, and we express no opinion with respect to, the holding of the Court of Appeals on the merits.

## II

Prior to 1971, appeals by the United States in criminal cases were restricted by 18 U. S. C. § 3731 to categories descriptive of the action taken by a district court, and they were divided between this Court and the courts of appeals.[7] In *United States* v. *Sisson,* 399 U. S. 267, 307–

---

whether the defendant had waived his right to a jury trial and (2) the District Court determined the character of evidence actually entered into the record "so it may be said that jeopardy had attached." In this case the Court of Appeals concluded that the second distinction between *Pecora* and *Hill* did not "permit our holding the instant order unappealable," and it noted that to the extent *Pecora* and *Hill* were inconsistent, it was bound by *Pecora.*

[7] Title 18 U. S. C. § 3731 (1964 ed., Supp. V) provided in pertinent part:

"An appeal may be taken by and on behalf of the United States

308 (1970), Mr. Justice Harlan aptly described the situation obtaining under the statute as it then read:

> "Clarity is to be desired in any statute, but in matters of jurisdiction it is especially important. Otherwise the courts and the parties must expend great energy, not on the merits of dispute settlement, but on simply deciding whether a court has the power to hear a case. When judged in these terms, the Criminal Appeals Act is a failure. Born of compromise,

from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

"From a decision arresting a judgment of conviction for insufficiency of the indictment or information, where such decision is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy.

"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section.

"From a decision arresting a judgment of conviction except where a direct appeal to the Supreme Court of the United States is provided by this section."

Provision for appeals in certain cases to the courts of appeals was first made in 1942. Act of May 9, 1942, c. 295, § 1, 56 Stat. 271, codified as former 18 U. S. C. § 682 (1946 ed.). Section 682 provided for an appeal to a court of appeals from "a decision or judgment quashing, setting aside, or sustaining a demurrer or plea in abatement to any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section."

and reflecting no coherent allocation of appellate responsibility, the Criminal Appeals Act proved a most unruly child that has not improved with age. The statute's roots are grounded in pleading distinctions that existed at common law but which, in most instances, fail to coincide with the procedural categories of the Federal Rules of Criminal Procedure. Not only does the statute create uncertainty by its requirement that one analyze the nature of the decision of the District Court in order to determine whether it falls within the class of common-law distinctions for which an appeal is authorized, but it has also engendered confusion over the court to which an appealable decision should be brought."

At the same time that this Court was struggling with the "common law distinctions" of former § 3731, the decisions of the Courts of Appeals were demonstrating that, even when apparently straightforward, the language of the statute was deceptive. Thus, although after 1948 [8] § 3731 literally authorized an appeal to a court of appeals whenever an indictment or information was set aside or dismissed except where direct appeal to this Court was authorized, that provision was generally construed, as it was construed by the Court of Appeals in this case, *supra*, at 381, and n. 4, to authorize an appeal to a court of appeals only if the decision setting aside or dismissing an indictment or information was "based upon a defect in the indictment or information, or in the institution of the prosecution." *United States* v. *Apex Distributing Co.*, 270 F. 2d 747, 755 (CA9 1959). See *United States* v. *Ponto*, 454 F. 2d 657, 659–663 (CA7 1971). In such fashion, even

[8] Act of June 25, 1948, 62 Stat. 844, codified as former 18 U. S. C. § 3731 (1946 ed., Supp. II). The reviser's note states that "[m]inor changes were made to conform to Rule 12 of the Federal Rules of Criminal Procedure."

those "common law distinctions" which were removed from the face of the Criminal Appeals Act by the 1948 amendments were preserved by judicial construction. See *United States* v. *Apex Distributing Co., supra,* at 751–755; *United States* v. *DiStefano,* 464 F. 2d 845, 847–848 (CA2 1972).

The limits of the appellate jurisdiction of this Court and the courts of appeals under former § 3731, as construed, resulted in the inability of the United States to appeal from the dismissal of prosecution in a substantial number of criminal cases. In those cases where appellate jurisdiction lay in this Court, review was limited further by decisions of "the United States not to appeal the dismissal of a prosecution believed to be erroneous, simply because the question involved [was] not deemed of sufficiently general importance to warrant" our attention.[9]

It was against this background that Congress undertook to amend § 3731. The legislative history of the 1970 amendments indicates that Congress was concerned with what it perceived to be two major problems under the statute as then construed: lack of appealability in many cases, and the requirement that certain appeals could be taken only to this Court. See S. Rep. No. 91–1296, pp. 4–18 (1970). Particular concern was expressed with respect to problems of appealability "in selective service cases where judges have reviewed defendants' selective service files before trials and dismissed the indictments after finding that there have been errors by the draft boards." *Id.,* at 14. Congress was of the view that "earlier versions of section 3731" had been subject to "restrictive judicial interpretations

---

[9] Department of Justice Comments on S. 3132, in S. Rep. No. 91–1296, p. 24 (1970). See also letter from Solicitor General Griswold to Senator McClellan, *id.,* at 33.

of congressional intent." *Id.*, at 18. Accordingly, it determined to "assure that the United States may appeal from the dismissal of a criminal prosecution by a district court in all cases where the Constitution permits," and that "the appeal shall be taken first to a court of appeals." *Id.*, at 2–3. See *id.*, at 18.

In light of the language of the present version of § 3731, including the admonition that its provisions "shall be liberally construed to effectuate its purposes," and of its legislative history,[10] it is clear to us that Congress intended to authorize an appeal to a court of appeals in this kind of case so long as further prosecution would not be barred by the Double Jeopardy Clause.[11] We turn to that inquiry.

### III

Although articulated in different ways by this Court, the purposes of, and the policies which animate, the Double Jeopardy Clause in this context are clear. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea,

---

[10] The relevance and significance of the "well considered and carefully prepared" report of the Senate Judiciary Committee, see *Schwegmann Bros.* v. *Calvert Distillers Corp.*, 341 U. S. 384, 395 (1951) (Jackson, J., concurring), is not affected by the fact that the amendments proposed by the Committee and adopted without change by the Senate were modified by the House-Senate Conference Committee. See H. R. Conf. Rep. No. 91–1768, p. 21 (1970). The latter report contains no explanation of the changes made, and the changes themselves are consistent with the intent expressed in the Senate Report. See *United States* v. *Wilson, ante,* at 337–339.

[11] This has been the general view of the Courts of Appeals. *E. g., United States* v. *Jenkins,* 490 F. 2d 868, 870 (CA2 1973), aff'd, *ante,* p. 358; *United States* v. *Brown,* 481 F. 2d 1035, 1039–1040 (CA8 1973). But see, *e. g., United States* v. *Southern R. Co.,* 485 F. 2d 309, 312 (CA4 1973).

one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U. S. 184, 187–188 (1957). See *United States* v. *Jorn,* 400 U. S. 470, 479 (1971); *Price* v. *Georgia,* 398 U. S. 323, 326 (1970).

As an aid to the decision of cases in which the prohibition of the Double Jeopardy Clause has been invoked, the courts have found it useful to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of "attachment of jeopardy." See *United States* v. *Jorn, supra,* at 480. In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. *Downum* v. *United States,* 372 U. S. 734 (1963); *Illinois* v. *Somerville,* 410 U. S. 458 (1973). In a nonjury trial, jeopardy attaches when the court begins to hear evidence. *McCarthy* v. *Zerbst,* 85 F. 2d 640, 642 (CA10 1936). See *Wade* v. *Hunter,* 336 U. S. 684, 688 (1949). The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is "put to trial before the trier of the facts, whether the trier be a jury or a judge." *United States* v. *Jorn, supra,* at 479. See *Kepner* v. *United States,* 195 U. S. 100, 128, 130–131 (1904); *United States* v. *Macdonald,* 207 U. S. 120, 127 (1907); *Bassing* v. *Cady,* 208 U. S. 386, 391–392 (1908); *Collins* v. *Loisel,* 262 U. S. 426, 429 (1923).[12]

---

[12] To the extent the passages referred to deal with the predecessors of the present version of § 3731, they are relevant because of the Court's view that appeals from orders entered prior to the attach-

Under our cases jeopardy had not yet attached when the District Court granted petitioner's motion to dismiss the indictment. Petitioner was not then, nor has he ever been, "put to trial before the trier of facts." The proceedings were initiated by his motion to dismiss the indictment. Petitioner had not waived his right to a jury trial, and, of course, a jury trial could not be waived by him without the consent of the Government and of the court. Fed. Rule Crim. Proc. 23 (a). See *Patton* v. *United States*, 281 U. S. 276, 312 (1930); *Singer* v. *United States*, 380 U. S. 24 (1965). In such circumstances, the District Court was without power to make any determination regarding petitioner's guilt or innocence. Petitioner's defense was raised before trial precisely because "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining" its validity. *United States* v. *Covington*, 395 U. S. 57, 60 (1969). See Fed. Rule Crim. Proc. 12 (b)(1).[13] His motion to postpone the trial was premised on the belief that "the expeditious administration of justice will be served best by considering the Motion [to dismiss the indictment] prior to trial." At no time during or following the hearing on petitioner's motion to dismiss the indictment did the District Court have jurisdiction to do more than grant or deny that motion, and neither before nor after the ruling did jeopardy attach.

## IV

Petitioner acknowledges that "formal or technical jeopardy had not attached" at the time the District

ment of jeopardy presented no constitutional problem. See *infra,* at 392.

[13] Pursuant to 18 U. S. C. §§ 3771 and 3772, proposed amendments to the Federal Rules of Criminal Procedure, including amendments to Rule 12, were transmitted to Congress on April 22, 1974. The effective date of the proposed amendments was postponed until August 1, 1975, by Act of July 30, 1974, 88 Stat. 397.

Court ruled on his motion to dismiss the indictment. However, he argues that because that ruling was based on " 'evidentiary facts outside of the indictment, which facts would constitute a defense on the merits at trial,' *United States* v. *Brewster,* 408 U. S. 501, 506" (1972), it was the "functional equivalent of an acquittal on the merits" and "constructively jeopardy had attached." The argument is grounded on two basic and interrelated premises. First, petitioner argues that the Court has admonished against the use of "technicalities" in interpreting the Double Jeopardy Clause, and he contends that the normal rule as to the attachment of jeopardy is merely a presumption which is rebuttable in cases where an analysis of the respective interests of the Government and the accused indicates that the policies of the Double Jeopardy Clause would be frustrated by further prosecution. Cf. *United States* v. *Velazquez,* 490 F. 2d 29, 33 (CA2 1973). Second, petitioner maintains that the disposition of his motion to dismiss the indictment was, in the circumstances of this case, the "functional equivalent of an acquittal on the merits," and he concludes that the policies of the Double Jeopardy Clause would in fact be frustrated by further prosecution. See *United States* v. *Ponto,* 454 F. 2d 657, 663–664 (CA7 1971). We disagree with both of petitioner's premises and with his conclusion.

It is true that we have disparaged "rigid, mechanical" rules in the interpretation of the Double Jeopardy Clause. *Illinois* v. *Somerville,* 410 U. S. 458, 467 (1973). However, we also observed in that case that "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Ibid.* Cf. *United States* v. *Sisson,* 399 U. S., at 303. Implicit in the latter statement is the premise that the "constitutional policies underpinning

the Fifth Amendment's guarantee" are not implicated before that point in the proceedings at which "jeopardy attaches." *United States* v. *Jorn,* 400 U. S., at 480. As we have noted above, the Court has consistently adhered to the view that jeopardy does not attach until a defendant is "put to trial before the trier of the facts, whether the trier be a jury or a judge." *Id.,* at 479. This is by no means a mere technicality, nor is it a "rigid, mechanical" rule. It is, of course, like most legal rules, an attempt to impart content to an abstraction.

When a criminal prosecution is terminated prior to trial, an accused is often spared much of the expense, delay, strain, and embarrassment which attend a trial. See *Green* v. *United States,* 355 U. S., at 187–188; *United States* v. *Jorn, supra,* at 479. Although an accused may raise defenses or objections before trial which are "capable of determination without the trial of the general issue," Fed. Rule Crim. Proc. 12 (b)(1), and although he must raise certain other defenses or objections before trial, Fed. Rule Crim. Proc. 12 (b)(2), in neither case is he "subjected to the hazards of trial and possible conviction." *Green* v. *United States, supra,* at 187. Moreover, in neither case would an appeal by the United States "allow the prosecutor to seek to persuade a second trier of fact of the defendant's guilt after having failed with the first." *United States* v. *Wilson, ante,* at 352. See *United States* v. *Jorn, supra,* at 484. Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier "having jurisdiction to try the question of the guilt or innocence of the accused." *Kepner* v. *United States,* 195 U. S., at 133. See *Price* v. *Georgia,* 398 U. S., at 329. Without risk of a determination of guilt, jeop-

ardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

Petitioner's second premise, that the disposition of his motion to dismiss the indictment was the "functional equivalent of an acquittal on the merits," and his conclusion that the policies of the Double Jeopardy Clause would be frustrated by further prosecution in his case need not, in light of the conclusion we reach above, long detain us. It is, of course, settled that "a verdict of acquittal . . . is a bar to a subsequent prosecution for the same offence." *United States* v. *Ball,* 163 U. S. 662, 671 (1896); *Green* v. *United States, supra,* at 188. Cf. *Kepner* v. *United States, supra; Fong Foo* v. *United States,* 369 U. S. 141 (1962). But the language of cases in which we have held that there can be no appeal from, or further prosecution after, an "acquittal" cannot be divorced from the procedural context in which the action so characterized was taken. See *United States* v. *Wilson, ante,* at 346–348. The word itself has no talismanic quality for purposes of the Double Jeopardy Clause. Compare *United States* v. *Oppenheimer,* 242 U. S. 85, 88 (1916), with *United States* v. *Barber,* 219 U. S. 72, 78 (1911), and *United States* v. *Goldman,* 277 U. S. 229, 236–237 (1928). In particular, it has no significance in this context unless jeopardy has once attached and an accused has been subjected to the risk of conviction.

Our decision in *United States* v. *Sisson,* 399 U. S. 267 (1970), is not to the contrary. As we have noted in *United States* v. *Wilson, ante,* at 350–351, we do not believe the Court in *Sisson* intended to express an opinion with respect to the constitutionality of an appeal by the United States from the order entered by the District Court in that case. Moreover, even if we were to take the contrary view, we would reach the same conclusion here. For in *Sisson,* jeopardy had attached; the order

of the District Court was "a legal determination on the basis of facts adduced at the trial relating to the general issue of the case." 399 U. S., at 290 n. 19. See *id.*, at 288; *United States* v. *Jorn, supra,* at 478 n. 7. Whatever else may be said about *Sisson*,[14] it does not alter the fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy.

Similarly, petitioner's reliance on *United States* v. *Brewster,* 408 U. S. 501 (1972), is misplaced. The question in that case was whether the Court had "jurisdiction under 18 U. S. C. § 3731 (1964 ed., Supp. V) to review the District Court's [pretrial] dismissal of the indictment against appellee." *Id.,* at 504–505. In the course of concluding that there was jurisdiction, we observed: "Under *United States* v. *Sisson,* 399 U. S. 267 (1970), an appeal does not lie from a decision that rests, not upon the sufficiency of the indictment alone, but upon extraneous facts. If an indictment is dismissed as a result of a stipulated fact or the showing of evidentiary facts outside the indictment, which facts would constitute a defense on the merits at trial, no appeal is available. See *United States* v. *Findley,* 439 F. 2d 970 (CA1 1971)." 408 U. S., at 506. The question at issue in *Brewster,* the question decided in *Sisson,* and the citation of *United States* v. *Findley*,[15] demonstrate beyond question that this passage in *Brewster* was not concerned with the constitutional question which, by virtue of the 1970 amendments to 18 U. S. C. § 3731, is before us in this case.

---

[14] It is clear that Congress intended to overrule *Sisson*'s construction of former § 3731 in the 1970 amendments. See S. Rep. No. 91–1296, p. 11 (1970); n. 10, *supra.*

[15] In analyzing *Sisson* the Court of Appeals in *Findley* concluded: "Collectively we believe this was an approach not in terms of double jeopardy, but in terms of the kind of error section 3731 was intended to cover." 439 F. 2d 970, 973.

## V

In holding that the Court of Appeals correctly determined that it had jurisdiction of the United States' appeal in this case under 18 U. S. C. § 3731, we of course express no opinion on the question whether a similar ruling by the District Court after jeopardy had attached would have been appealable. Nor do we intimate any view concerning the case put by the Solicitor General, of "a defendant who is afforded an opportunity to obtain a determination of a legal defense prior to trial and nevertheless knowingly allows himself to be placed in jeopardy before raising the defense." Compare *United States* v. *Findley,* 439 F. 2d 970, 973 (CA1 1971), with *United States* v. *Pecora,* 484 F. 2d, at 1293–1294. See *United States* v. *Jenkins,* 490 F. 2d 868, 880 (CA2 1973), aff'd, *ante,* p. 358. We hold only that the Double Jeopardy Clause does not bar an appeal by the United States under 18 U. S. C. § 3731 with respect to a criminal defendant who has not been "put to trial before the trier of the facts, whether the trier be a jury or a judge." *United States* v. *Jorn,* 400 U. S., at 479.

*Affirmed.*

MR. JUSTICE DOUGLAS dissents, being of the view that the ruling of the District Court was based on evidence which could constitute a defense on the merits and therefore caused jeopardy to attach.