Clancy CUNNINGHAM, Petitioner,

v.

The DISTRICT COURT OF the THIR-
TEENTH JUDICIAL DISTRICT OF
the STATE OF MONTANA et al., Re-
spondents.

L. R. BRETZ, Petitioner,

v.

Roger CRIST, as Warden of the Mon-
tana State Penitentiary, Deer Lodge,
Montana, and John Moe, as Sheriff of
Missoula County, Montana, Respon-
dents.

Merrel CLINE, Relator,

v.

The STATE OF MONTANA and Roger
Crist, Warden, Montana State
Penitentiary, Respondents.

Nos. CV–75–112–BLG—CV–75–114–BLG.

United States District Court,
D. Montana,
Billings Division.

Dec. 31, 1975.

Moses, Kampfe, Tolliver & Wright,
Billings, Mont., for Clancy Cunningham.

Charles F. Moses, Moses, Kampfe, Tol-
liver & Wright, Billings, Mont., for L. R.
Bretz.

W. William Leaphart, The Leaphart
Law Firm, Helena, Mont., for relator
Merrel Cline.

Richard Dzivi, Special Pros., Robert L.
Woodahl, Atty. Gen. for the State of
Montana, Helena, Mont., for respondents.

## MEMORANDUM AND ORDER

BATTIN, District Judge.

The above-named petitioners have in-
dividually submitted petitions for writs

of habeas corpus. Due to the similarity of issues, the cases were consolidated.

## BACKGROUND FACTS.

### Petitioner Cunningham

Petitioner was charged in Information No. 9017, filed on August 24, 1973, in Yellowstone County, with first degree assault. On March 21, 1974, a jury was impaneled and sworn, and the omnibus instruction was read. Prior to the swearing of any witness, the State was granted a motion to dismiss due to the unavailability of the key witness. A second Information alleging third degree assault was filed on May 20, 1974. On August 16, 1974, the Yellowstone County District Court granted petitioner's motion to quash the Information because of double jeopardy. On May 2, 1975, the Supreme Court of Montana reversed the District Court's order, holding that further prosecution was not barred by double jeopardy provisions of the United States and Montana Constitutions. *State of Montana v. Cunningham*, Mont., 535 P.2d 186 (1975). The Supreme Court denied petitioner's petition for rehearing on May 20, 1975. The matter was set for trial on November 11, 1975.

### Petitioners Bretz and Cline

Information No. 3921 was filed on October 3, 1974, in Lewis and Clark County, charging petitioners with the commission of nine felonies. On March 13, 1975, a jury was impaneled and sworn, but no witnesses were sworn. The trial court then granted a motion by petitioners to dismiss one count. The State filed and the District Court granted a motion to dismiss the remaining counts on April 4, 1975, before any witnesses were sworn; a second Information, No. 3963, alleging the commission of two felonies by petitioners, was filed on the same day. Petitioners' motion to dismiss on the grounds of double jeopardy was filed on April 25, 1975, and the District Court denied it on May 1, 1975. Petitioner Bretz filed a petition for habeas corpus with the Supreme Court of Montana, alleging double jeopardy. This was denied by that court on July 23, 1975. *Bretz v. Sheriff*, Mont., 539 P.2d 1191 (1975). On September 2, 1975, the Supreme Court denied a rehearing. A trial commenced in the District Court of the First Judicial District on June 16, 1975, and on July 2, 1975 petitioners were found guilty of obtaining money by false pretenses—the same count that had been dismissed as the result of petitioners' motion.

## ISSUES.

1. Is Section 95–1711 of the Revised Codes of Montana, 1947, constitutional in light of the double jeopardy provisions of the Fifth Amendment to the United States Constitution and the Montana Constitution?

2. Assuming that the United States Supreme Court were to hold that jeopardy attaches in state proceedings when the jury is sworn, does the doctrine of "manifest necessity" require that a further trial be held as to petitioners Bretz and Cline?

## DISCUSSION.

A. *Application of Fifth Amendment to the States.*

There is no doubt that the double jeopardy prohibition contained in the Fifth Amendment to the United States Constitution applies to the States. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Court in *Benton* stated:

"In 1937, this Court decided the landmark case of *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288. Palko, although indicted for first-degree murder, had been convicted of murder in the second degree after a jury trial in a Connecticut state court. The State appealed and won a new trial. Palko argued that the Fourteenth Amendment incorporated, as against the States, the Fifth Amendment requirement that no person 'be subject for the same offense to be twice put in jeopardy of life or limb.' The Court disagreed. Federal double jeopardy standards were not

applicable against the States. Only when a kind of jeopardy subjected a defendant to 'a hardship so acute and shocking that our polity will not endure it,' *id.* at 328, 58 S.Ct. [149], at 153, did the Fourteenth Amendment apply. The order for a new trial was affirmed. In subsequent appeals from state courts, the Court continued to apply this lesser *Palko* standard. See, e. g., *Brock v. North Carolina,* 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456 (1953).

"Recently, however, this Court has 'increasingly looked to the specific guarantees of the [Bill of Rights] to determine whether a state criminal trial was conducted with due process of law.' *Washington v. Texas,* 388 U.S. 14, 18, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967). In an increasing number of cases, the Court 'has rejected the notion that the Fourteenth Amendment applies to the States only a "watered-down, subjective version of the individual guarantees of the Bill of Rights . . . ."' *Malloy v. Hogan,* 378 U.S. 1, 10–11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964). Only last Term we found that the right to trial by jury in criminal cases was 'fundamental to the American scheme of justice,' *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968), and held that the Sixth Amendment right to a jury trial was applicable to the States through the Fourteenth Amendment. For the same reasons, we today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment. Insofar as it is inconsistent with this holding, *Palko v. Connecticut* is overruled." (Footnotes omitted.) *Benton, supra,* at 793–794, 89 S.Ct. at 2062.

But the Court has been careful to distinguish between *substantive rights* and *procedures.* A review of the Court's actions concerning the right to trial by jury clearly establishes that the Court has determined that as long as the sub-

stance of the right is maintained, then the procedure by which the result is reached is wholly within the discretion of the State. See 47 Am.Jur.2d 640, 641.

■ As held in *Duncan, supra,* the due process clause of the Fourteenth Amendment imposes the Sixth Amendment trial by jury right upon the States. Rule 23(b) of the Federal Rules of Criminal Procedure, established to protect these rights, requires that a jury shall consist of twelve persons and that a verdict shall be unanimous. Despite this federal rule, several States have differing provisions.

Oregon and Louisiana, for example, have determined that notwithstanding the federal requirement of unanimity, a conviction could be attained on a less than unanimous jury vote. The Supreme Court has held that the States have the right and power to set such procedures and that the federal rule was strictly for use in federal trials. *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); *Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).

Similarly, the Supreme Court has determined that a State can provide for a jury trial of less than twelve persons—again notwithstanding federal rules to the contrary. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

Clearly, the Supreme Court has not mandated that States accept the federal procedure as long as the State procedure preserves the constitutional objective. Montana's procedural rule does not present a "watered-down version" of the constitutional right. The defendants' substantive rights receive no less protection under the Montana statute than under federal procedures, for, practically speaking, the swearing of the jury and the swearing of the first witness occur nearly at the same point in time. Since the substance of the right has been clearly preserved, then the object of the constitutional provision guaranteeing that the defendant shall not be placed in jeopardy twice has been met.

As the Montana Supreme Court stated in *Cunningham, supra,* 535 P.2d at 189:

"We find no substantial difference between the two rules. Montana policy as enunciated by its legislature is that the trial does not start until the first witness is sworn. Sound policy reasons exist for this rule, principally that the jury as the trier of the facts has nothing to consider until the first witness is called and sworn. This appears entirely consistent with the constitutional standard that jeopardy does not attach until the defendant has been put to trial before the trier of the facts. *Serfass v. United States* (1975), *supra* [420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265]."

The Court, noting that they could perceive no inherent merit in the federal rule over Montana's state law, further stated:

". . . It has been said that the federal rule is designed to prevent prosecutorial manipulation. *Illinois v. Somerville* [88 Ill.App.2d 212, 232 N.E.2d 115], *supra.* It has further been said that the federal rule guarantees the defendant his valued right to have his trial completed before the tribunal and jury selected for his case. *Wade v. Hunter* (1949) 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974; *United States v. Jorn, supra* [400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)].

"We fail to see in what manner the federal rule protects against these abuses to a greater extent than Montana law. Prosecutorial manipulation can be effected as readily under one rule as under the other. If bent on manipulation, a federal prosecutor can move to dismiss after the jury is selected but before it is sworn, as readily as a state prosecutor can move to dismiss after the jury is sworn but before the first witness is called. In either case, the real protection against prosecutorial manipulation is the discretion of the trial judge in granting or denying dismissal. Here, for example, the judge could have, but did not, dismiss with prejudice.

"Nor do we see any greater protection in the federal rule as far as securing to defendant the right to have his trial completed before the court and jury selected to try his case. Montana adheres to this principle also. It all depends on when the trial is considered to have commenced—whether on selection and swearing of the jury as in the federal courts, or on swearing the first witness as in Montana state courts." *Cunningham, supra,* at 188.

The United States Supreme Court has never rendered any blanket holding to the effect that a State could not decide at what point jeopardy has attached. The petitioners have cited *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), which they contend holds that the States cannot decide for themselves when Fifth Amendment jeopardy attaches. This is clearly not the holding of that case. The sole issue in that case was whether a juvenile court adjudication constituted a trial, thereby establishing double jeopardy on a subsequent adult trial for the same offense. The Court, addressing itself primarily to the unique nature of juvenile proceedings and the legal rights of juveniles, concluded that such a proceeding was, in fact, like a trial and jeopardy attached. Nowhere in the opinion does the Court baldly assert that a State cannot determine at what point a trial commences. Nor does the Court ever attempt to impose any federal procedural rule upon the California Juvenile Court. The sole concern in *Breed,* as it is in the instant case, is not whether federal procedures were followed, but whether federally guaranteed rights were violated.

The Arizona Supreme Court, faced with the same conflict between federal and state rules, upheld the constitutionality of their own state rule. The Court concluded:

"The United States Supreme Court has held that the double jeopardy clause of the Fifth Amendment to the United States Constitution is applicable to the States. [Citations omitted.]

They did not define what constituted jeopardy and we believe the States are still allowed a certain degree of discretion as to what amounts to jeopardy. We hold, as a matter of law, that jeopardy had not attached in this case." *State v. Padilla*, 107 Ariz. 134, 483 P.2d 549, 553 (1971); cert. den. 404 U.S. 1049, 92 S.Ct. 718, 30 L.Ed.2d 740 (1971).

I agree with that Court's holding.

■ Therefore, I conclude that the statute does not violate the United States Constitution nor the Montana Constitution, Article II, Section 25. *State of Montana v. Cunningham, supra*, 535 P.2d 186.

### B. *Manifest Necessity.*

■ Assuming that jeopardy attaches in state proceedings when the jury is sworn, the doctrine of manifest necessity would nevertheless require that a further trial be held as to petitioners Bretz and Cline.

The State alleges in its brief and oral argument that petitioners were well aware of a typographical error as to one count in the information—specifically, a date of 1973 which had inadvertently been typed "1974". The State continues that the petitioners, knowing of this error, waited until the jury was sworn and then moved for dismissal. The State, considering that it was the most important of the nine counts, dismissed the remaining eight counts and refiled the information charging two counts—alternative pleading of a single offense.

The petitioners contend that their motion to dismiss was simply to require the prosecution to conform the evidence to the pleadings and that there was no reliance by the defendants on any defect in the pleadings.

Regardless of how the parties attempt to characterize the factual situation, it appears that the flaw was nothing more than a typographical defect, which should not bar the continuation and completion of the trial.

The United States Supreme Court has been confronted with similar situations. In concluding that jeopardy had not attached, the Court in *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), stated:

" . . . The interest of the public in seeing that a criminal prosecution proceed to verdict, either of acquittal or conviction, need not be forsaken by the formulation or application of rigid rules that necessarily preclude the vindication of that interest. This consideration, whether termed the 'ends of public justice,' [citation omitted] or, more precisely, 'the public's interest in fair trials designed to end in just judgments,' [citation omitted] has not been disregarded by this Court." *Somerville, supra*, at 463, 93 S.Ct. at 1070.

To prevent the refiling of an information and subsequent trial as the result of such a typographical defect certainly precludes the public's interest in a fair trial designed to end in a just judgment.

As the Ninth Circuit recently stated:

"To adopt appellee's argument would require a mechanical formula to determine when jeopardy attaches. This approach well could undermine the policies and purposes of the constitutional safeguard. 'Whether jeopardy attaches is based on flexible policy considerations rather than hard and fast rules . . .' *United States v. Brown*, 481 F.2d 1035, 1040 (8 Cir. 1973); *see Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn, supra*, at 480, 91 S.Ct. 547." *U. S. v. Choate*, 527 F.2d 748, 1975.

Therefore, it is ordered that the petitions for writs of habeas corpus are denied.