DOUCET, Justice Ad Hoc.*
On August 23, 1977, the defendant, Bobby Leonard, was initially charged by bill of information with two (2) counts of burglary *1215 allegedly committed on or about July 28, 1977, in violation of LA-R.S. 14:62.
The defendant was arraigned September 8, 1977; counsel was appointed and a plea of not guilty was entered. The minutes do not reflect that bail was set; however, the defendant obviously was released because on October 5, 1977, he was charged by bill of information with another count of simple burglary, allegedly committed on or about September 26, 1977. He was again arraigned and this time entered a plea of not guilty and not guilty by reason of insanity. On the 27th day of October, 1977, there was application made for a sanity hearing and Drs. Genovese and Forrest were appointed to examine the defendant.
A preliminary examination was held on November 10,1977, and probable cause was found.
On May 24,1978, a second application for the appointment of a Sanity Commission was filed, and Drs. Genovese and Strobach were appointed on that date.
The record reflects that throughout 1978 there were numerous trial continuations and sanity hearing continuations, however, no explanation for the continuances is given by the record.
On March 23, 1979, the defendant was charged by bill of information with simple escape from the parish jail in violation of LA-R.S. 14:110(A), attempted aggravated rape in violation of LA-R.S. 14:14, and with six (6) counts of aggravated burglary in violation of LA-R.S. 14:60, all of the offenses allegedly occurring on or about January 6, 1979.
The defendant was arraigned on these new charges on March 28,1979, and he pled not guilty. Trial was set for June 25, 1979. On May 9, 1979, the defendant again appeared in court, accompanied by his appointed counsel, for the purpose of changing his former plea of not guilty to that of not guilty by reason of insanity. This plea was entered and accepted by the court on all three bills of information, which charged a total of eleven felony offenses.
At the time of the change of his plea, the defendant offered to the court a report by Dr. Richard Strobach, one of the physicians previously appointed to make a psychiatric examination of the defendant. That report, which was marked as Defense Exhibit One, is a three page document addressed to the trial judge, written by Dr. Strobach on June 9, 1978, pursuant to his appointment to the Sanity Commission. The letter describes the doctor’s interview with the defendant and discusses the defendant’s social and psychiatric history and the various tests administered by Dr. Strobach. The letter concludes with the doctor’s expert opinion that the defendant was not able to participate in his own defense at that time (June 9, 1978). The doctor went on to point out that future mental status examinations would determine when the defendant’s “cognitive defect” had been sufficiently ameliorated for him to be tried.[1]
*1216 The court accepted the defendant’s offer of the letter into evidence, and then ruled as follows:
Pursuant to this plea, it’s the sentence of the court that you be committed to East Louisiana State Hospital, Jackson, Louisiana, to be treated there until such time as they think you can be released.
As for — all three of them back there — actually they’re being released on a period of active probation, actually is what it is. That’s what it is, actually, a period of active probation, five years.[2]
Pursuant to this ruling, the defendant was transferred to the Louisiana State Hospital at Jackson, Louisiana.
On July 20, 1979, the court ordered that the defendant be returned to the parish jail for further proceedings, and on September 11, 1979, the court ordered that the sentence rendered on May 9,1979, be “vacated and recalled.” On December 28, 1979, a new sanity commission was appointed, consisting of Drs. Strobach and Genovese, and on February 13, 1980, a sanity hearing was conducted. In a letter dated January 17, 1980, from Dr. Strobach to the court, which was introduced at the sanity hearing, Dr. Strobach opined that the defendant was then able to stand trial. In a letter dated February 5, 1980, from Dr. Genovese to the court, also introduced at the sanity hearing, Dr. Genovese similarly stated the defendant’s competence to stand trial. These doctors testified and the court ruled that the defendant was competent to stand trial.
Pursuant to this ruling the defendant filed a motion to quash the bills of information which was denied by the trial court. This Court granted defendant’s writs to consider the issue of double jeopardy.
The first issue discussed by the defendant and the state is the legality of the defendant’s pleas of “not guilty by reason of insanity.”
La.C.Cr.P. Article 552 provides in pertinent part:
There are four kinds of pleas to the indictment at arraignment:
(1) Guilty;
(2) Not guilty;
(3) Not guilty and not guilty by reason of insanity; or
(4) Nolo contendere.
The State argues that on May 9,1979, the defendant entered a plea for which there is no statutory or jurisprudential basis and that it was therefore invalid. -
The defendant points out that he had previously pled “not guilty” and the transcript does not reflect that he withdrew that plea, therefore, when the court accepted his additional plea of “not guilty by reason of insanity", that plea was, in effect, combined with his earlier plea to produce the statutorily required “not guilty and not guilty by reason of insanity”. La.C.Cr.P. Article 561 authorizes the trial court to accept such a change of plea at any time before the commencement of the trial. It is clear that the present defendant’s intention was to change his plea pursuant to this Article. The defendant points out that the state did not at that time object to the precise wording of the plea and that therefore the state should now be estopped to deny the validity of the plea.
These technical arguments are advanced by the parties because the state maintains that since the plea was invalid, the sentence was illegal and the trial court properly vacated it some months later. The defendant maintains that the plea was valid, and further, that it was “tantamount to an alternative admission of criminal conduct”. State v. Clark, 305 So.2d 457 (La.1974). It is argued that this valid plea, and the evidence of insanity, as contained in the defendant’s Exhibit 1, fully supported the judge’s “verdict” and the resulting sentence was not illegal.
It is clear that the Criminal Code makes no provision for the plea of “not guilty by reason of insanity”. It is equally clear that the defendant intended to enter *1217 the dual plea of “not guilty and not guilty by reason of insanity” and that neither the prosecutor nor the trial judge noticed the failure of the defendant to use the exact wording provided by La.C.Cr.P. Article 552. Furthermore, the trial judge’s May 9, 1979, disposition of the case was unaffected by the defendant’s omission, and there is nothing in the record which suggests that this faulty plea was the basis of the trial court’s decision to vacate the sentence and recall the defendant. Therefore, it appears that this minor procedural error cannot support the trial court’s denial of defendant’s motion to quash.
The state next argues that even if this Court finds that the defendant’s plea was valid and was properly accepted that the sentence imposed was nonetheless illegal because under La.C.Cr.P. Article 654 specific procedures are outlined whereby a defendant, who is found not guilty by reason of insanity may be committed to a proper mental institution. This article requires that the court promptly hold a contradictory hearing to determine the defendant’s present mental fitness to be released on probation or discharged. No such hearing was ordered in the present case. The judge merely ruled that “it is the sentence of the court that you be committed to East Louisiana State Hospital, Jackson, Louisiana, to be treated there until such time as they think you can be released.” The state argues that this sentence was not proper and that Article 882 of the Code of Criminal Procedure allowed the subsequent vacating of that sentence. While this argument may have merit, the “correction” of the illegality of this sentence would not entail vacating the sentence and recalling the defendant for trial, but would, rather, require that a contradictory hearing be immediately scheduled.
Finally, the state argues that under La.C. Cr.P. Article 872: “a valid sentence must rest upon a valid and sufficient: ... (3) verdict, judgment or plea of guilty”. Because there was no trial, the state argues that there could be no valid verdict or judgment. No witnesses were called and, the state argues, the merely pro forma entry of Dr. Strobach’s letter (Defense Exhibit 1) into evidence could not constitute a sufficient basis for a verdict of not guilty by reason of insanity. We agree with this argument of the state. As this Court held in State v. Mims, 329 So.2d 686 (La.1976), a verdict of not guilty presupposes a trial in which the facts have been put in issue and determined in the defendant’s favor. The Mims court went on to note that a remand to the lower court for trial on the merits would not impinge the defendant’s guarantee against double jeopardy because La.C. Cr.P. Article 761 provides that a trial by a judge commences when the first witness is sworn. Similarly, under La.C.Cr.P. Article 592, “When a defendant pleads not guilty, jeopardy begins when the first witness is sworn at the trial on the merits.”
Applying the Mims reasoning to the present case, we find that a trial on the merits would not violate the double jeopardy guarantee because the defendant was never placed initially in jeopardy.
Addressing the defendant’s argument that when the trial court admitted into evidence Dr. Strobach’s letter, to the effect that the defendant was incompetent to stand trial, the court at that point began to hear evidence within the meaning of Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). In that case, the Court held that in a non-jury trial, jeopardy attaches when the court begins to hear evidence. However, in that case, the court found that the petitioner therein had not ever been put to trial because he had never waived his right to a jury trial and therefore the trial court was without power to make any determination regarding the petitioner’s guilty or innocence. Similarly, the present defendant has not ever waived his right to a jury trial. The petitioner in Serfass also made the argument that the submission to the trial court of “evidentiary facts outside the indictment, which facts would constitute a defense on the merits at trial”, provoked the trial court’s ruling, and thus, that ruling, to dismiss the indictment, was the functional equivalent of a trial on *1218 the merits and jeopardy should have attached. The Serfass court rejected this argument noting that the defendant was not put in jeopardy at his motion to quash the indictment because he was not “subjected to the hazards of trial and possible conviction”. There was no risk of a determination of guilt so there was no jeopardy to attach.
Similarly, in the present case, the petitioner’s argument that the submission to the trial judge of Dr. Strobach’s letter constituted the initiation of jeopardy, must fail because the court appearance on May 9, 1979, was not a trial and the defendant could not have been convicted on that occasion. Since there was no trial, the “verdict” and “sentence” of May 9,1979, were void ab initio, and the trial judge’s subsequent recall and vacation of the sentence was clearly an acknowledgement by him of that fact.
Finally, the defendant argues that if his double jeopardy argument is rejected by this Court, as it is, then to recall the defendant for trial would, at the very least, constitute a violation of a plea bargain undoubtedly made by the defendant.
This argument is unpersuasive in view of the fact that there is no evidence in the record to support the underlying premise that the defendant’s plea was the product of a bargain made with the prosecutor. Even if such a bargain were in fact made, then, as the state points out, the withdrawal of the plea is the proper remedy for a violation of the terms of a plea bargain. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Crosby, 338 So.2d 584 (La.1976).
The case is remanded for further proceedings consistent with this opinion.
CALOGERO, specially concurs and assigns reasons.

 Judges CECIL C. CUTRER, JIMMY M. STOKER and NED E. DOUCET, JR., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice JOHN A. DIXON, JR., and Associate Justices PASCAL F. CALOGERO, JR., JAMES L. DENNIS, and JACK C. WATSON.

. My impression of this patient is that he has a classical anti-social personality disorder with a classical anti-social personality disorder promoting childhood background. In addition his drug abuse has caused him to develop a mild chronic psychosis that is schizophrenic-like. However, he is not schizophrenic. He has periods of psychotic symptomatology secondary to his drug abuse and thus he has a cognitive defect (difficulty with his memory and difficulty connecting thought processes, etc.). For this reason I feel he cannot participate in his defense at this time. His symptomatology needs to be treated with an anti-psychotic medication. Thus I recommend transfer to the forensic unit at East Louisiana State Hospital where he can be properly medicated. Repeat mental status examinations will determine when his cognitive defect has been ameliorated to the point where he can participate in his defense. Of course the patient will require outpatient follow-up at the Mental Health Center and I strongly recommend this be mandatory for the patient. One further note would be that although this patient’s symptoms could be treated in a prison or jail, it would be very risky because constant psychiatric supervision for the medication side effects would be required for the first few weeks. Thus in-patient treatment and further evaluation would be in the best interest of the patient. Finally, because he is quite clever and ambivalent about being medicated, I would strongly recommend judicial commitment for this patient. I certainly hope this report aids the court in determining its decision. Thank you very much,
Sincerely,
(s) Richard P. Strobach, M.D.
Richard P. Strobach, M.D.

. This sentence was also applied to two other defendants then present in the court room.