In the Interest of J.K., a Minor,

State of Iowa, Appellant.

No. 91–1073.

Court of Appeals of Iowa.

June 25, 1992.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Special Asst. Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellant.

Robert Kohorst and Kathleen S. Kohorst of Kohorst Law Firm, Harlan, for appellee, the child.

Heard by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ., but decided en banc.

SACKETT, Judge.

We address the State's contention that a delinquency petition should not have been dismissed following a juvenile court finding at a waiver hearing there was not probable cause the child had committed the offense with which she was charged. We affirm the order dismissing. We are divided three-three on the issue of whether the child was put in jeopardy at the waiver hearing.

A delinquency petition was filed in Shelby County charging Joanne [1] with second degree murder for abandoning and neglecting her newborn baby. After the delinquency petition was filed, the State made application to waive juvenile court jurisdiction under Iowa Code section 232.45.

A hearing was held on the State's application to waive juvenile court jurisdiction. To obtain a waiver to district court, the State had to prove, among other things, there was probable cause Joanne committed the offense. *See* Iowa Code § 232.-45(6)(b). Both the State and Joanne intro-

---

1. The child's initials are J.K. Joanne is not her given name.

duced evidence relating to Joanne's guilt or innocence of the offense charged. The juvenile court found the State failed to provide substantial evidence to support a finding there was probable cause Joanne had committed murder in the second degree. The court ordered the delinquency petition dismissed.

The State appeals this dismissal contending (1) the court should have found there was probable cause Joanne committed the crime, and (2) the court should not have dismissed the delinquency petition. Joanne contends she has been put in jeopardy on the charge.

The facts are substantially undisputed. Joanne's parents are divorced. Since the divorce Joanne had lived with her mother in Colorado and her father in Harlan, Iowa. Joanne's child was conceived in Colorado. After the child's conception, Joanne had no further relationship with the father of her child and Joanne returned to Harlan, Iowa to live with her father.

In Harlan, Joanne attended school, worked in a drug store, and cared for younger children. Joanne recognized she was pregnant but did not seek medical advice. Joanne gained little weight. Only Joanne's mother, who Joanne told of the pregnancy, was aware Joanne was pregnant. Joanne's mother did not offer Joanne any help.

Joanne went into labor on Thursday, November 29, 1990. She went to school that Thursday. She left class and went to the school nurse complaining of stomach pain. The school nurse took Joanne's temperature, found Joanne had a fever, and sent Joanne home to take aspirin. Joanne went home. She went to her bedroom where the baby was born after midnight. Joanne said the birth was very painful. She said the baby was gray and not moving when it was born. Joanne nudged the child to see if it would move. Joanne said the child did not move. Joanne said she then passed out. At some time Joanne put the baby in her closet. Joanne stayed home from school on Friday. She went to work on Saturday and Sunday. On Sunday Joanne took the baby out of the closet, put it in the trunk of her car and went to work at the drug store. After work Joanne placed the baby in a box from the drug store. She put the box with the baby in it in the machine shed on her uncle's farm. Joanne went back several times to move the child's body.

On April 27, 1991, the Shelby county Sheriff received a report the body of an infant was found on Joanne's uncle's farm. The sheriff and the county medical examiner went to the farm and found a baby's body in a box in a farm wagon in a machine shed. The county medical examiner estimated the infant had been dead two to four weeks. The state medical examiner autopsied the body.

After the child's body was discovered, Joanne and her father went to the sheriff. Joanne admitted she had given birth to the baby and put its body in the machine shed.

The disputed issue was when the child died. The State contended the baby was born alive. To support its position, the State relied on a written report of the State Medical Examiner Tom Bennett, M.D. Bennett's report referred to a test Bennett administered which he indicated showed the child had drawn breath. The test was a lung buoyancy test that compared the baby's lung tissue with the baby's liver tissue to determine if the lung tissue would float while the liver tissue sank in the same medium. Bennett's theory is in a live-birth the child would breathe, causing the lungs to expand and become more buoyant. Bennett further reasoned if the lung tissue floated while the liver tissue did not, this indicated the lung tissue was less dense because it had been inflated. Bennett presumed inflation was due to aspiration by the newborn child.

Bennett's assumptions were challenged by the testimony of a witness for defendant, a pathologist Earl Rose, M.D., of the University of Iowa Medical School. Rose said the test Bennett used was not reliable, particularly in a situation where, as here, decomposition of the body had occurred. Rose reasoned decomposition causes the lungs to fill with gas as does aspiration. Rose produced excerpts from eight forensic

pathology treatises that discussed the lung buoyancy test. The authors' opinions of the reliability of the test range from "should be viewed with caution" to "are of no value and may be misleading."

The juvenile court's order dismissing the petition made the following findings:

> There is no evidence of how long the infant lived after birth. There is no evidence it was alive when its mother fell asleep or passed out after delivering the child, when she awoke the following morning, or at any subsequent time. There is no substantial evidence the infant died as a result of any neglect or abandonment by the child in interest. There is no evidence this 17 year old child acted with malice aforethought.

## I.

■ We review juvenile proceedings de novo. Iowa R.App. P. 4. The State first contends on our review we should find the juvenile court finding of lack of probable cause is erroneous. To obtain an order waiving juvenile court jurisdiction, the State had the burden to prove there was probable cause Joanne had committed the offense. *See* Iowa Code § 232.45(6)(b).

Joanne was charged with second degree murder. A person commits second degree murder if he or she kills another with malice aforethought, and if he or she does not commit first degree murder. Iowa Code section 707.1 and 707.3 (1991).

In this case, after an extensive hearing, the juvenile court rejected the state medical examiner's opinion theory the baby had died in the machine shed from exposure.

We find the record clearly supports the juvenile court's finding there was not evidence of probable cause to find Joanne murdered her newborn baby. All the evidence and inferences from the evidence very clearly support the findings of the juvenile court. First, the state medical examiner's opinion is based on a lung buoyancy test. The assumptions the state medical examiner made from these tests are challenged not only by Joanne's pathologist but also by a number of other experts in this field. The medical evidence strongly sup-

ports a finding that the lung buoyancy test was not reliable here where the baby's body had decomposed and produced gases.

The State does not suggest there are additional facts showing the birth took place at a different time and place. The baby was born in Joanne's father's home and left there for some time after its birth. There were a number of other people in the home. They never heard a baby cry, nor were they ever aware of the presence of a child in the home. Had the child been alive, its presence would have been recognized.

We agree with the juvenile court, the State did not show probable cause. Not finding evidence to support a finding there was probable cause Joanne had murdered her child, the trial court was correct in dismissing the petition.

■ The State next argues, however, that even if the juvenile court was correct in finding a failure to prove probable cause, the case should not have been dismissed, rather it should have been left open for the State to bolster its case at a hearing on the merits. The State argues the failure was merely a failure to prove an element of the waiver, not a failure to prove an element of the offense.

The State also argues:

> In this case the State's chief witness, the State Medical Examiner, was not called, presumably due to the preliminary nature of the hearing. If called, he could have presented fully his position that the child was born alive and died from exposure in the machine shed. He was not called, not due to laxness on the prosecution, but because of the nature of the hearing—it was a preliminary hearing to determine which court this matter should be heard, not a trial on the merits. The county attorney was entitled to rely on the fact he was trying to show sufficient evidence to warrant trying the case in adult court and was not obligated at that procedural stage to prove he could win this case.

The State cites no authority to support its position a juvenile case should not be dis-

missed on a finding of a lack of probable cause Joanne committed the crime. We can find no justifiable reason not to dismiss the case where the State has failed to show probable cause. All judges affirm the juvenile court's order of dismissal.

## II.

Joanne contends she was put in jeopardy at the waiver hearing.

This is an issue of first impression in Iowa. While the State elected to appeal, the State's brief provides little guidance on the issue and only a general reference to a citation in ALR 4th. The State makes no effort to cite or discuss the large number of cases from other jurisdictions in the annotation. These cases reveal a split of authority exists on the issue.

Oxberger, C.J., and Donielson, and Habhab, JJ., would hold the waiver hearing was not an adjudicatory hearing and Joanne has not yet been put in jeopardy.

Schlegel, P.J., and Hayden, and Sackett, JJ., would find Joanne was put in jeopardy because there was an extensive hearing, the issue of probable cause was a part of the hearing, and substantial evidence on the issue was introduced by each side.

We affirm the dismissal and tax costs on appeal to the State.

AFFIRMED.

SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ., concur.

OXBERGER, C.J., and HABHAB, J., concur in part and dissent in part without opinion.

DONIELSON, J., concurs in part and dissents in part.

DONIELSON, Judge (concurring in part and dissenting in part).

I agree with the majority's finding there is no probable cause to believe the child committed second-degree murder. However, I do not agree the finding of no probable cause constitutes an adjudication on the merits of the case sufficient to implicate the double jeopardy clause of the fifth amendment. I would hold it does not.

The double jeopardy clause of the fifth amendment, made applicable to state court proceedings through the due process clause of the fourteenth amendment, has been held specifically applicable to state juvenile court proceedings. *See, e.g., Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The Court in *Breed* applied the double jeopardy clause to juvenile adjudicatory proceedings which determine a juvenile's delinquency, but the Court, nevertheless, recognized that non-adjudicatory juvenile transfer hearings can be held without jeopardy attaching. 421 U.S. at 538, 95 S.Ct. at 1790, 44 L.Ed.2d at 360. The Court stated:

We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. See *Collins v. Loisel*, 262 U.S. 426, 429 [43 S.Ct. 618, 619, 67 L.Ed. 1062,] (1923); *Serfass v. United States*, 420 U.S. 377, 391–392, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975). The instant case is not one in which the judicial determination was simply a finding of, *e.g.*, probable cause. Rather, it was an adjudication that respondent had violated a criminal statute.

*Breed*, 421 U.S. at 538, n. 18, 95 S.Ct. at 1790, n. 18, 44 L.Ed.2d at 360, n. 18 (the juvenile court in *Breed* had been directed by statute to make an adjudication of whether the child was a delinquent by a preponderance of the evidence.)

In the instant case, the juvenile court made its finding on the issue of probable cause in the context of deciding the larger question of whether to waive juvenile court jurisdiction of the matter. The waiver hearing was held pursuant to Iowa Code section 232.45, which provides, in relevant part:

1. After the filing of a petition which alleges that a child has committed a delinquent act on the basis of an alleged commission of a public offense *and before an adjudicatory hearing on the merits of the petition is held*, the county

attorney of the child may file a motion requesting the court waive its jurisdiction over the child for the alleged commission of the public offense.

\* \* \* \* \* \*

6. At the conclusion of the waiver hearing the court may waive its jurisdiction over the child for the alleged commission of the public offense if all of the following apply:

*b.* The court determines ... there is *probable cause* to believe that the child has committed a delinquent act which would constitute the public offense.

\* \* \* \* \* \*

Iowa Code § 232.45 (1991) (emphasis added).

Clearly this statute contemplates a non-adjudicatory hearing wherein only a finding of probable cause need be made. The juvenile court is not instructed by section 232.45 to adjudicate whether the child is a delinquent by any standard of proof. Rather, it is section 232.47 which contemplates and prescribes the procedure for an adjudicatory hearing on the merits of the petition. *See* Iowa Code § 232.47 (1991).

As such, I do not believe the juvenile court hearing on waiver of jurisdiction was adjudicatory in nature or purpose, and the juvenile court's finding of no probable cause cannot be found to implicate the double jeopardy clause. *See Breed,* 421 U.S. at 538, n. 18, 95 S.Ct. at 1790, n. 18, 44 L.Ed.2d at 360, n. 18; *United States v. Martinez,* 536 F.2d 886, 890–91 (9th Cir. 1976); *Keener v. Taylor,* 640 F.2d 839, 842–43 (6th Cir.1981); *Hall v. McKenzie,* 575 F.2d 481, 484 (4th Cir.1978); *Government of Virgin Islands v. Smith,* 558 F.2d 691, 694–95 (3d Cir.1977).