**UNITED STATES of America**
**v.**
**Thomas J. PECORA.**
**Crim. A. No. 71–133.**

United States District Court,
W. D. Pennsylvania.

Nov. 10, 1972.

Richard Thornburgh, U. S. Atty., Thomas Bergstrom, and Kenneth Bravo, Dept. of Justice, Strike Force, Pittsburgh, Pa., for plaintiff.

Robert E. Wayman, Pittsburgh, Pa., for defendant.

MEMORANDUM and ORDER

McCUNE, District Judge.

Thomas J. Pecora has been indicted under section 186 of the Labor-Management Relations Act which makes it an offense for an employee representative to receive from an employer or for an employer to give to an employee repre-

sentative "any payment, loan, or delivery of any money or other thing of value." [1]

The defendant has filed a motion to dismiss the indictment and the issue is now before the court on stipulated facts. Counsel agreed that we should decide the motion on the basis of stipulated facts. The question is whether the facts as stipulated constitute a violation of § 186. We do not think that they do constitute a violation.

The stipulation establishes that Thomas Pecora has been a long time and active member of Local 1058, Construction and General Laborers and Materials Handlers. He joined the union in 1938 and presently holds local membership card No. 4. At the time of the incidents leading to the indictment Pecora was the business manager of Local 1058.

In October, 1965, Thomas Pecora and Loretta Pecora were cosigners on a $30,600.00 note signed by Gerald and Angela Pecora. In January, 1967, when the note had been reduced to $25,250.00, the entire balance was due. It was not paid and was subsequently reduced to judgment. Thomas Pecora made interest payments on the note through March, 1968.

In July, 1968, planning began for a testimonial dinner to honor Pecora for his long involvement in the labor movement. There is no stipulation that Pecora instigated the planning. The so called dinner-dance was to be held October 13, 1968, in Monroeville, Pennsylvania. The Thomas Pecora Testimonial Dinner Committee was formed to make the arrangements. The committee sold tickets to the dinner priced at $50.00 per couple and solicited advertisements in a souvenir program at the rate of $300.00 per page. Pecora was not a member of the committee.

The Testimonial Dinner Committee sold $44,400.00 worth of tickets and advertising. Employers who employed at least some of the members of Local 1058 bought $13,900.00 of the $23,250.00 worth of advertising which had been sold and $11,500.00 of the $21,150.00 worth of tickets sold. The remainder of the tickets and advertising were purchased by persons not defined in the stipulation as employers of Local 1058 employees. Prices for advertising and tickets were the same for all buyers.

At the dinner, with approximately 800 persons in attendance, Pecora was given a 1969 Oldsmobile "98" worth $5,324.96, a color television set valued at $448.00, a plaque, a citation from the International Union, and a 30 year pin. On three later dates, after $11,871.72 had been deducted to cover dinner expenses, he was given the balance of the proceeds, amounting to $26,755.32, in cash installments.

The indictment alleges that when Pecora accepted the cash and gifts, $25,450.00 of which represented contributions by employers of Local 1058 members, he violated Section 186.

This is a case of first impression and neither the court nor counsel have discovered any cases dealing with similar facts. Our review of the legislative history and of the cases which have construed § 186 has convinced us that the statute should not be construed to fit the charges pressed here.

■ There is no indication in the legislative history that Congress was concerned with the type of situation at hand. They were concerned with "cor-

---

1. (a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; . . . .

(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section. . . . 29 U.S.C. § 186.

ruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control. Congressional attention was focussed particularly upon the latter problem. . . ." Arroyo v. United States, 359 U.S. 419, 425–426, 79 S.Ct. 864, 868, 3, L.Ed.2d 915 (1959). See generally 1959 U.S.Code Cong.Adm.News, p. 2318. Section 186 has been used often, however, to prosecute alleged corrupt labor practices not associated with welfare funds.

There is a grave ethical question involved in this case and no doubt a conflict of interest, but we are not persuaded that Congress intended the actions in issue to be a violation of the Act. "The prohibition on receipt by union officers of money from employers at best was intended to reach only certain forms of bribery and extortion and was not designed to be a sweeping regulation or prohibition of all forms of conflict of interest." United States v. Lippi, 190 F. Supp. 604, 607–608 (D.Del.1961). It is the kind of transaction which we think was outside the evil at which Congress was aiming.

■ Any device, no matter how apparently legitimate, which is used to transfer money from an employer to a representative of his employees must be subjected to strict scrutiny. This is especially true with respect to testimonial dinners, such as the one here, which result in sizeable cash contributions to the beneficiary. On the stipulated facts, however, we can find no indication that the testimonial dinner involved any direct solicitation by Pecora from the employers of his union members. He was insulated from direct contact with the employers by the activities undertaken on his behalf by the Testimonial Dinner Committee. There is no indication in the stipulated facts that Pecora had instigated the dinner for his own profit; or that his judgment or his decisions as Local 1058 Business Manager were influenced by the source of any of the money; or that the representatives of the committee attempted to intimidate employers of Local 1058 members to procure the sale of tickets or advertising. Pecora did not directly solicit the employers to buy tickets or advertising.

It is important to note that this holding is strictly limited to the stipulated facts. If the stipulation had indicated in any way that there was corruption involved or that there was circumstantial evidence from which an inference of corruption could reasonably be drawn our conclusion might be different.

But where the defendant is not directly involved in the solicitation of the employers of the men he represents and is insulated from contact with those employers by a dinner committee we think the government must allege some facts other than the mere receipt of money from the dinner committee to support an indictment under § 186. It is true that part of the money the committee distributed came from the employers and the inference is clear that Pecora's friends had decided to help him pay his indebtedness and that they knew that employers would be amenable to solicitation. On the other hand there is no basis upon which to infer that the employers were intimidated or that they received any favors from Pecora in his work as a business agent.

It is simply a question of what inferences are permissible under the facts presented. Under what conditions can a conviction be sustained? Testing these facts the other way, could the employers be convicted for purchasing the tickets and advertising when they knew Pecora's committee was raising a great deal more money than required to pay for a dinner? Was this activity carried out with a corrupt intention or was it merely an expression of good will? There is insufficient evidence upon which to infer a corrupt purpose.

We hold that the government on the stipulated facts has not established a violation of § 186. Therefore the indictment is ordered dismissed.

It is so ordered.