**UNITED STATES of America,**
**Appellant,**

**v.**

**Thomas J. PECORA, Appellee.**

**No. 72-2173.**

United States Court of Appeals,
Third Circuit.

Argued June 11, 1973.

Decided Aug. 31, 1973.

Richard L. Thornburgh, Sidney Glazer, Kenneth A. Bravo, Asst. Attys., U. S. Dept. of Justice, Pittsburgh, Pa., for appellant.

Robert E. Wayman, Wayman, Irvin, Trushel & McAuley, Pittsburgh, Pa., for appellee.

Before GIBBONS, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Thomas J. Pecora was indicted under § 186(b) of the Labor-Management Relations Act which makes it an offense for an employee representative to receive from an employer "any payment, loan, or delivery of any money or other thing of value."[1] After a prehearing conference, the government and appellee entered into a stipulation as to the facts upon which the indictment was returned. This stipulation was attached to a motion to dismiss the indictment filed by appellee. The district court, 351 F. Supp. 164, granted appellee's motion, and the government has appealed. We must consider two questions: (1) Whether the government has the right to appeal the dismissal of the indictments under 18 U.S.C. § 3731; and (2)

---

[1]. The pertinent parts of 29 U.S.C. § 186 are as follows:

"(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

"(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

"(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

"(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

"(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section."

if it does, whether the district court was correct in its dismissal.

Appellee Thomas J. Pecora was the business manager of Local 1058, Construction and General Laborers and Materials Handlers. In July, 1968 the Thomas Pecora Testimonial Dinner Committee was formed to honor appellee for his involvement in the labor movement. Tickets to the dinner cost fifty dollars per couple and advertisements in a souvenir program cost three hundred dollars per page. Appellee was not a member of the committee nor did the stipulation state he instigated the planning.

The committee's efforts were fruitful. It sold $44,400.00 worth of tickets and advertising. Employers who employed some members of Local 1058 purchased $25,450.00 worth of tickets and advertising.

At the dinner, appellee received a new car worth $5,324.96, a color television set worth $448.00, a plaque, a citation from the International Union, and a 30-year pin. Following the dinner, after $11,871.72 was deducted to cover expenses, appellee received the balance of the proceeds: $26,755.32 in cash. It was the receipt of this cash and the gifts which the government claims violated § 186(b).

The district court decided that the stipulated facts did not constitute a vio-

lation of § 186 and dismissed the indictment. The court reasoned that the government had not alleged any facts which showed any direct involvement of appellee in the solicitation of contributions from the employers.[2] The court determined that a corrupt purpose had to be shown for an indictment to be valid under § 186 and that "the mere receipt of money" was not sufficient. The government challenges that interpretation.

Before we reach that issue, we must decide whether the government has the right to appeal the district court's order.

## I. APPEAL BY THE GOVERNMENT

In 1971, 18 U.S.C. § 3731 was amended[3] to read, in pertinent part, as follows:

"§ 3731. Appeal by United States

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court, dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

\*     \*     \*     \*     \*     \*

"The provisions of this section shall be liberally construed to effectuate its purposes."

---

2. The district court stated that:

"On the stipulated facts, however, we can find no indication that the testimonial dinner involved any direct solicitation by Pecora from the employers of his union members. He was insulated from direct contact with the employers by the activities undertaken on his behalf by the Testimonial Dinner Committee. There is no indication in the stipulated facts that Pecora had instigated the dinner for his own profit; or that his judgment or his decisions as Local 1058 Business Manager were influenced by the source of any of the money; or that the representatives of the committee attempted to intimidate employers of Local 1058 members to procure the sale of tickets or advertising. Pecora did not directly solicit the employers to buy tickets or advertising.

\*     \*     \*     \*     \*

" .   .   .. It is true that part of the money the committee distributed came from employers and the inference is clear that Pecora's friends had decided to help him pay his indebtedness and that they knew that employers would be amenable to solicitation. On the other hand there is no basis upon which to infer that the employers were intimidated or that they received any favors from Pecora in his work as a business agent.

" .   .   .   . Was this activity carried out with a corrupt intention or was it merely an expression of good will? There is insufficient evidence upon which to infer a corrupt purpose." Appendix, pgs. 47a–48a.

3. The effective date of the amendment was January 2, 1971. Pub.L. 91–644, Title III, § 14(a), 84 Stat. 189o.

This amendment replaced a statute described by the Supreme Court as "a failure . . . an awkward and ancient Act." United States v. Sisson, 399 U.S. 267, 307, 308, 90 S.Ct. 2117, 2139, 26 L. Ed.2d 608 (1970).[4] Under the old statute, it is most probable that the government would not have been able to appeal the decision of the district court for the Supreme Court had stated in United States v. Brewster, 408 U.S. 501, 506, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) about the "old" § 3731:

> "Under United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), an appeal does not lie from a decision that rests, not upon the sufficiency of the indictment alone, but upon extraneous facts. If an indictment is dismissed as a result of a stipulated fact or the showing of evidentiary facts outside the indict-
> 
> ment, which facts would constitute a defense on the merits at trial, no appeal is available. See United States v. Findley, 439 F.2d 970 (CA1 1971)."

As amended, however, Section 3731 provides that the government may appeal from an order or decision dismissing an indictment except where the double jeopardy clause prohibits it. United States v. Sisson, supra, 399 U.S. at 306, 307, note 61, 90 S.Ct. 2117. Because of the amendment of Section 3731, it would appear that the statement in Brewster is no longer an accurate statement of the law. The First Circuit, for example, in United States v. Findley, 439 F.2d 970, 973 (1st Cir. 1971) (cited with approval by the Supreme Court in Brewster), conceded that the defendant had not been formally placed in jeopardy when a district court judge considered a motion to dismiss an indictment based on stipu-

---

4. The old § 3731 read as follows:
"3731. Appeal by United States

"An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment is founded.

"From a decision arresting a judgment of conviction for insufficiency of the indictment or information, where such decision is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy.

"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section.

From a decision arresting a judgment of conviction except where a direct appeal to the Supreme Court of the United States is provided by this section.

"From an order, granting a motion for return of seized property or a motion to sup-

press evidence, made before the trial of a person charged with a violation of any law of the United States, if the United States attorney certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of the charge pending against the defendant.

"The appeal in all such cases shall be taken within thirty days after the decision or judgment has been rendered and shall be diligently prosecuted.

"Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released in accordance with chapter 207 of this title.

"If an appeal shall be taken, pursuant to this section, to the Supreme Court of the United States which, in the opinion of that Court, should have been taken to a court of appeals, the Supreme Court shall remand the case to the court of appeals, which shall then have jurisdiction to hear and determine the same as if the appeal had been taken to that court in the first instance.

"If an appeal shall be taken pursuant to this section to any court of appeals which, in the opinion of such court, should have been taken directly to the Supreme Court of the United States, such court shall certify the case to the Supreme Court of the United States, which shall thereupon have jurisdiction to hear and determine the case to the same extent as if an appeal had been taken directly to that Court."

lated facts before a jury has been impaneled.

We have a similar situation before us and we agree with the conclusion of the First Circuit that jeopardy has not attached. Therefore, the government may appeal the decision of the district court.

■ In a jury case, jeopardy attaches when a jury has been impaneled and sworn; in a non-jury case, jeopardy attaches after the court has begun to hear evidence. *E. g.*, United States v. Hill, 473 F.2d 759 (9th Cir. 1972). Was this a jury or a non-jury case? Appellee argues that by entering into the stipulation of facts he "essentially waived" his right to a jury trial. Rule 23(a) of the Federal Rules of Criminal Procedure, however, states that a defendant is entitled to a jury trial unless he waives the right "in writing with the approval of the court and the consent of the government." Entering into the stipulation of facts for the purpose only of attacking the validity of the indictment did not constitute the waiver necessary under Rule 23(a). As the Supreme Court has said, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that 'we do not presume acquiescence in the loss of fundamental rights.' " (Footnotes omitted). Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461. Although the defendant normally argues that he has not waived a right, there is no reason to subvert a principle which protects defendants because in this particular case it would benefit him to have a less strict standard of waiver. Absent compliance with Rule 23(a), there can be no waiver of a jury trial.

Appellee relies upon the decision in United States v. Hill, 473 F.2d 759 (9th Cir. 1972). In *Hill*, the defendants were charged with mailing obscene advertisements. The parties stipulated which materials were alleged to be obscene. Based on the indictments and the stipulation, the defendants moved to dismiss the indictments. The stipulated materials were introduced into evidence, and the court granted the motion to dismiss on the ground that the materials were not legally obscene. The Ninth Circuit determined that the government could not appeal the decision.

*Hill* is distinguishable for two reasons.[5] One, the court did not determine whether the defendant had waived his right to a jury trial; and two, evidence was actually entered into the record. The district court determined the character of that evidence so it may be said that jeopardy had attached.

We are aware of the rationale behind the decision in *Findley* (and equally applicable in *Hill* and here):

"If an appeal will lie in the present case, while it cannot if the defendant waits and subjects himself to jeopardy, informed counsel believing they have a defense on the merits will henceforth protect their clients by avoiding an expediting procedure otherwise beneficial to all concerned, and only ignorant and ill-advised defendants will subject their defense on the merits to a government appeal." United States v. Findley, *supra* 439 F.2d at 974.

But we find this consideration is outweighed by Congress' intention as expressed in the plain wording of the statute.[6] As the Supreme Court com-

---

5. The government contends that:

"... the Court in *Hill* erroneously tried to apply 18 U.S.C. § 3731, as amended, to an indictment returned before the effective date of that amendment. 1970 U.S. Code Cong. and Adm. News, pp. 2217, 5849. The *Hill* indictment was returned on December 22, 1970, and the effective date of the amendment to § 3731 was January 2, 1971. 84 Stat. 1890." (Government's reply brief, page 2).

Since we are not bound by the decision in *Hill*, it is its reasoning we are concerned with, and not whether its decision was technically correct.

6. The Senate apparently attempted to make § 3731 even broader. Its draft of the bill permitted the government to appeal *any* decision or order terminating a prosecution except an acquittal. S. 3132, 91st Cong. 2d Sess. See 116 Cong.Rec. 35658. The con-

mented in *Sisson, supra* 399 U.S. at 307, 90 S.Ct. at 2139:

> "Clarity is to be desired in any statute, but in matters of jurisdiction it is especially important. Otherwise the courts and the parties must expend great energy, not on the merits of a dispute settlement, but on simply deciding whether a court has the power to hear a case."

Our interpretation of § 3731 does not subvert any constitutional rights of citizens. It merely gives effect to the Congressional intention not to expand on these rights.[7]

## II. 29 U.S.C. § 186(b)

Our review of the district court's interpretation of § 186(b) is governed by our recent decision in United States v. Lanni, 466 F.2d 1102 (3d Cir. 1972). In *Lanni,* we emphasized that § 186(b) forbids all payments, direct or indirect, between employers and representatives of employees. This result follows from both the plain wording of the statute and the Congressional history. The Supreme Court has read the statute as we read it, United States v. Ryan, 350 U.S. 299, 305, 76 S.Ct. 400, 100 L.Ed. 335 (1956); and so has the Second Circuit. United States v. Ricciardi, 357 F.2d 91, 99 (2d Cir. 1966).

The district court indicated that some kind of "corrupt purpose" was necessary for a violation of § 186(b) to occur.[8] As we have stated, that is simply not correct. To allow a device such as this to go unchecked would make a mockery of attempts to enforce § 186(b). It would not take much ingenuity to devise an insulating body between an employer and a representative of employees and shuttle the payments through the body. The congressional purpose in enacting § 186(b) would be poorly served by our allowing it.

As we stated in *Lanni* and reiterate here, all that was necessary to prove a wilful violation of § 186(b) is that appellee benefited from the money paid to the Committee with knowledge:

(1) that there were "payments"; and

(2) that the payments came from employers who employed workers represented by Pecora. United States v. Lanni, 466 F.2d 1102, 1110.

There are stated exceptions to the strict rule of § 186(b). Appellee claims that the testimonial dinner falls within subsection (c)(3). This subsection permits "the sale or purchase of an article or commodity at the prevailing market price in the regular course of business." 29 U.S.C. § 186(c)(3). Appellee contends that the dinner committee "sold" a testimonial dinner at the prevailing market price.

This contention is entirely lacking in merit, and we reject it. Even if we were to assume that a testimonial dinner was a "commodity," and even if we were to assume that it was sold in "the regular course of business," it would strain credulity to believe that the market price for an advertisement in the program was $300 or that the value of the dinner was twenty-five dollars per person. The fact that out of gross proceeds of $44,400 the expenses of the dinner amounted only to $11,871.72 belies a conclusion that the testimonial was offered at the market price.

Appellee also contends that there was no evidence that he knew or was

---

ference committee redrafted the provision to read as it now does. 1970 U.S.Code Cong. and Adm. News, pp. 5848–5849. While no reason is given for the change, it would appear that the Senate's draft would have permitted appeals in cases where the double jeopardy clause would have prohibited them because double jeopardy often prohibits reprosecution after a trial begins and is terminated even though the defendant was not ac-

quitted. See, *e. g.,* United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

7. Even if jeopardy had attached, our inquiry would not end. We would then be obligated to determine whether double jeopardy prohibited reprosecution.

8. See footnote 2.

aware that any of the money he received came from employers whose employees were represented by appellee. This contention is also without merit. Incorporated into the stipulation were portions of the grand jury testimony of the chairman of the dinner committee. In that testimony, the chairman stated that appellee on various occasions would ask the chairman's secretary how the dinner was "coming along"; that on one occasion he went with the chairman to make arrangements for the dinner; and that at the dinner were various contractors who dealt with local unions represented by appellee. The chairman further testified that appellee was at the dinner, that he had been in the union for thirty years, and that he dealt with contractors "all of the time." From this testimony, one can easily infer that appellee knew that employers of union members he represented had contributed money.

The order of the district court sustaining the motion to dismiss the indictment will be reversed, and the case remanded to that court for trial.