**STATE**

**v.**

**Ralph PARI et al.**

**No. 87–360–C.A.**

Supreme Court of Rhode Island.

Aug. 3, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Eva Marie Mancuso, Asst. Atty. Gen., for plaintiff.

Marvin A. Brill, John Tramonti, Jr., Providence, (Jones & Aisenberg, on brief, Providence), for defendants.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court following a somewhat unusual procedural course in the Superior Court. These defendants had moved for dismissal of two counts of a twenty-count indictment.[1] For the hearing on those motions the state and the defendants submitted an agreed statement of facts for the court to consider. The state appeals from the trial justice's granting of the motions to dismiss. The defendants argue that the state has no right of appeal because by agreement the court treated the motions to dismiss as motions for judgment of acquittal. And, to allow the state to appeal would subject them to double jeopardy. Although we disagree with the defendants on the double-jeopardy issue, we affirm the order of dismissal.

For a full understanding of the issues before the court a fairly detailed recitation of the facts will be necessary. On August 14, 1985, a twenty-count indictment was returned charging defendant Ralph A. Pari (Pari) with embezzlement of money and property in his capacity as director of the Rhode Island Housing Mortgage Financing Corporation (RIHMFC). Count 18 of the indictment charged that Pari, defendant Edward Manning (Manning), and defendant Steven Pascarella (Pascarella), against whom charges were later dismissed, had obstructed the due administration of justice in violation of G.L. 1956 (1981 Reenactment) § 11–32–3. Count 19 charged Pari and Manning, along with several unindicted coconspirators, with conspiring to obstruct the due administration of justice in violation of G.L. 1956 (1981 Reenactment) § 11–1–6 and § 11–32–3.

Pari and Manning filed motions to dismiss counts 18 and 19, and the state and defendants agreed that the motions to dismiss could be treated by the court as mo-

---

1. As to the substantive offenses with which defendant Ralph A. Pari has been charged in the indictment, he has entered pleas of nolo contendere in the Superior Court and has been sentenced.

tions for judgment of acquittal under Rule 29 of the Superior Court Rules of Criminal Procedure. For the purposes of deciding those motions the state and defendants agreed to submit a statement of facts to the court. The following is a summary of what was agreed to by the parties.

On March 5 and March 12, 1985, the chief investigator for the Office of the Attorney General met with Pari to inform him that the attorney general's staff planned to conduct a series of investigations regarding RIHMFC. The investigator intentionally did not "tip his hand" to Pari that the investigation would focus on the internal affairs of RIHMFC.

During the last week of March 1985 Pari asked a RIHMFC employee, named C. Rusty Monaghan (Monaghan), to contact Lissee Wagner (Wagner), owner of Carousel Travel, Inc. (Carousel), in order to ascertain the amount of money owed by him for personal travel. Wagner refused Pari's request and contacted her attorney, Anthony J. Brosco (Brosco).

Wagner and other Carousel employees would testify that at Pari's request, Carousel maintained a credit account to be used by certain RIHMFC employees, with Pari's approval, for travel not related to RIHMFC business. That credit account accrued capital as a result of both billings requested by Pari and paid for by RIHMFC for plane tickets that were never issued and billings from Carousel to RIHMFC for plane tickets returned by RIHMFC wherein the refund was deposited into the credit account rather than returned to RIHMFC. Wagner would testify that she arranged personal travel for Pari by using the funds in the credit account.

On March 28, 1985, Wagner told Pari that she had contacted her attorney concerning his request. The next day Brosco, Wagner, and Monaghan met to review the credit-account record in order to determine the amount owed. Brosco concluded that they needed an accountant to determine what was due and to "straighten out the records." The same day Manning advised Brosco that he represented Pari, and he referred Brosco to Pascarella for account-

ing services. Manning also stated that Carousel would not be responsible for fees for the accountant's services or for refunds to RIHMFC.

On April 2, 1985, Pascarella and employees of his accounting firm began to reconcile the records of transactions between the travel agency and RIHMFC. The records related to corporate and personal travel of Pari and other RIHMFC employees. Between March 29 and April 16, 1985, according to Brosco, there were several meetings attended by Brosco, Pari, Manning, Pascarella, Joseph Pari (Pari's brother), and John Trench (Trench), who was Pascarella's partner. The purpose of the meetings was to establish which billings were for tickets actually used by RIHMFC employees and which billings were for tickets that were never used, but rather were placed in the credit account in Pari's name.

The accountant's work product, which contained a series of ledger sheets, was placed in a binder sometimes referred to as the "black book." Column 9 of the ledger sheets contained the entries that were purported to be credits. Trench and Monaghan would testify that on April 16 or 17, 1985, they copied the figures from column 9 onto three pieces of paper, using several kinds of pens and pencils "to make it appear that the records were kept contemporaneous[ly] with various billings and payments to Carousel." Monaghan would testify that the first two pages of the three pieces of ledger paper that were created by Trench and Monaghan were Xeroxed and the originals were destroyed to disguise the fact that the records were made on April 16 and 17. Monaghan would also testify that she prepared these records at Pari's request.

Between April 6 and April 12, 1985, Brosco, Manning, Pari, Joseph Pari, and Trench met to assist with the reconciliation of these records. On April 12, 1985, Manning advised Brosco of the exact amount of money, as determined by the accounting firm, to be paid back from Carousel to RIHMFC. Manning informed Brosco that he would receive $26,000 from Joseph Pari. He suggested that Brosco deposit the mon-

ey in amounts of less than $10,000 in various banks. Manning said that moneys should be deposited in Carousel's checking account and then a check should issue, making it appear that Carousel had repaid RIHMFC. According to Brosco, Manning also suggested that Brosco direct Wagner to sign a promissory note payable to Brosco giving the impression that Brosco had lent the money to Carousel and Wagner in order that the money be repaid to RIHMFC. Brosco would testify that on April 12, 1985, he received $26,000 in cash from Joseph Pari.

Brosco would further testify that on April 12, 1985, he completed a check on Carousel's Rhode Island Hospital Trust account, previously signed by Wagner. The check was issued to RIHMFC in the amount of $25,987. Brosco hand-delivered the check to Joseph Pari and informed him of the purpose of the check. The check was deposited into RIHMFC's Pawtucket Savings and Trust operating account. Monaghan recorded this transaction in RIHMFC's general ledger as "receipts of credits connected with travel agency."

A statewide grand jury convened on April 16, 1985, and issued a subpoena duces tecum to RIHMFC and then on April 19, 1985, issued a subpoena to Carousel. RIHMFC's general ledger was "turned over" to the grand jury pursuant to the April 16 subpoena.

Trench, Pari, Brosco, Manning, and Joseph Pari met on April 19, 1985 to discuss the grand jury subpoena issued to Carousel. Manning expressed the opinion that all records must be turned over to the grand jury. Brosco and Pari discussed other billings related to RIHMFC employees, and determined that these billings were unrelated to RIHMFC and therefore did not belong in the "black book."

On April 22, 1985, Trench, Brosco, Manning, and Joseph Pari met at Pascarella and Trench's office to discuss the investigation and the scope of the subpoena served on RIHMFC and Carousel. According to Trench, Brosco and Robert Huntoon (Huntoon), the audit investigator for the attorney general's office had audited several

agencies and had requested specific records. The discussion focused on which records had to be produced.

Brosco would testify that on April 23, 1985, he discussed with Huntoon, Carousel's failure to comply with the grand jury's subpoena. Huntoon would testify that he advised Brosco that his review of the records showed "substantial amounts of records missing." The next day Brosco related this conversation with Huntoon to Manning and Pari.

On April 29, 1985, the grand jury issued a subpoena duces tecum to Pari and RIHMFC requesting agency records involving operating funds and records relating to the $25,987 refund from Carousel to RIHMFC.

According to Trench, he, Pari, Manning, Joseph Pari, and David Bethume, an accountant for Pascarella and Trench, met between April 19 and 28, 1985, to discuss the credit account. At those meetings, additional Carousel records were reviewed to determine which trips were taken by Pari for personal reasons and which trips were for business and also to determine whether the documentation was in Carousel's or RIHMFC's records.

On May 17, 1985, a copy of the "black book" containing Pascarella and Trench's work product was delivered to the attorney general by Brosco's attorney. The "black book" had, up until then, been in Brosco's custody from April 6, 1985.

In his decision on defendants' motions to dismiss, the trial justice found that there had been an agreement among defendants to alter documents to deceive the Office of the Attorney General and its investigators. However, he found that there was "no conspiracy to obstruct justice because there was no pending judicial proceeding," the grand jury not yet having been convened.

The trial justice also addressed the state's contention that Brosco obstructed justice by turning over falsified documents to the grand jury and that the other persons were coconspirators and also guilty as principals. He concluded that under the circumstances Brosco would have violated

the law if he had not turned over the "black book" because the grand jury had subpoenaed it. Consequently, he reasoned, defendants could not be guilty of obstruction of justice or conspiracy on those facts, and the trial justice accordingly granted the motions to dismiss.

## THE DOUBLE-JEOPARDY ISSUE

■ General Laws 1956 (1985 Reenactment) § 9–24–32 provides in part:

"In any criminal proceeding, the attorney-general shall have the right to object to any finding, ruling, decision, order or judgment of the superior court or family court, and the attorney-general may appeal such findings, rulings, decisions, orders or judgments to the supreme court at any time before the defendant has been placed in jeopardy * * *."

The agreed statement of facts submitted to the trial justice stated clearly that "all parties agree that for the purposes of a pre-trial determination of the legal basis for Counts 18 and 19, *and only for that purpose*, this Statement of Facts should be accepted by this Honorable Court as proven facts." (Emphasis added.) Toward the end, the statement of facts also contained this language: "The preceeding is the agreed Statement of Facts of the parties. It is the parties' intentions that the aforementioned facts are for the purposes of informing the Court as to the facts the State would present in order to maintain a prima facie case as to Counts 18 and 19 * * *. This agreed Statement of Facts is in no way to be construed as a limitation upon the facts the State would present at trial if it were successful on the merits of this motion. Nor are they admissions by the defendants to be used in any manner whatsoever should this case proceed to trial." The record establishes clearly that the right to a trial by jury was specifically reserved by defendants in the event that their motions to dismiss were denied.

"[T]he accused may * * * with leave of the court, waive a trial by jury * * * ." G.L. 1956 (1981 Reenactment) § 12–17–3. Rule 23(a) of the Superior Court Rules of Criminal Procedure requires that the waiver take place in open court, in writing, and with approval of the court. That did not happen in this case. Here the trial justice was empowered by the agreement of the parties to consider the facts only for a pretrial determination. The defendants specifically reserved their right to trial. During oral argument on the motion, Pari's attorney stated, "We are not here to try the case." It is clear that if the motion had been denied, the parties would have proceeded to trial. In view of this fact, we cannot accept the defendants' assertion of a double-jeopardy violation.

The facts in this case are virtually identical with those in *Serfass v. United States*, 420 U.S. 377, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975). In that case the defendant filed a pretrial motion to dismiss an indictment accompanied by an affidavit of facts. The District Court granted the motion to dismiss, and the government appealed. The Circuit Court of Appeals rejected the defendant's claim that it lacked jurisdiction to hear the appeal because of the double-jeopardy clause. The Circuit Court discussed its earlier opinion in *United States v. Pecora*, 484 F.2d 1289 (3d Cir. 1973),—in which it noted that the defendant in that case also had not waived his right to a jury trial; that no jury had been sworn at the time the trial court ruled on his motion to dismiss the indictment—and ruled that jeopardy had not attached. The court ruled that the dismissal was an order that was appealable by the government. The Circuit Court in *Serfass* reached the same conclusion, and the Supreme Court affirmed. The Supreme Court reiterated the view it had consistently adhered to, that jeopardy does not attach until a defendant is "put to trial before the trier of the facts, whether the trier be a jury or a judge." *Serfass*, 420 U.S. at 391, 95 S. Ct. at 1064, 43 L. Ed. 2d at 275 (quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S. Ct. 547, 554, 27 L. Ed. 2d 543, 553 (1971)).

"Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* at 391–92, 95 S. Ct. at 1064, 43 L. Ed. 2d at 276.

The defendants argue that when the trial court ruled that the agreed statement of facts was not sufficient to establish factual guilt as a matter of law, the ruling constituted an acquittal under the double-jeopardy clause. As authority they cite the case of *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S. Ct. 1745, 90 L. Ed. 2d 116 (1986). In that case the trial court had sustained the defendant's demurrer which he filed pursuant to the Pennsylvania Rules of Criminal Procedure. The demurrer would be approximately equivalent in effect to our Rule 29 motion for a judgment of acquittal. The Pennsylvania State Supreme Court ruled that the double-jeopardy clause did not ban an appeal by the Commonwealth. The United States Supreme Court reversed. However, *Smalis* is of no benefit to these defendants because that defendant's demurrer was heard and granted during a jury-waived trial and after the prosecution had presented its evidence and had rested. Clearly jeopardy had attached when that trial began.

The procedural course of this case is really an anomaly under our practice. The arrangement was that the trial justice would apply the criteria applicable to a motion for judgment of acquittal. That meant, we assume, that the trial justice would view the evidence in the light most favorable to the state, would draw every reasonable inference consistent with guilt, but would neither assess the credibility of witnesses nor assign weight to the evidence. *State v. Gazerro*, 420 A.2d 816 (R.I. 1980); *State v. McGranahan*, 415 A.2d 1298 (R.I. 1980). The motion for judgment of acquittal is normally made at the end of the state's case or before the case is submitted to the jury at which point in either instance jeopardy has attached. The situation in this case was quite different. The defendant argues, in effect, that by applying the Rule 29 criteria to the motion to dismiss, the hearing on the motion became the equivalent of a trial. We reject that proposition. At the motion hearing defendants' attorneys stated that they reserved the right to proceed to trial. They also reiterated that the statement of facts before the trial justice was to be used only for the "very limited purpose" of the motion to dismiss. In fact, Pari's attorney stated, "We are not here to try the case."

The record before us indicates that the parties intended only that the standards for the criteria for a motion for judgment of acquittal apply to the motion to dismiss—not that the motion itself be transformed into a motion for judgment of acquittal. We conclude that these defendants were not in jeopardy at the hearing on the motion to dismiss and therefore could not suffer double jeopardy as a result of this appeal.

## THE OBSTRUCTION–OF–JUSTICE ISSUE

The Rhode Island Obstruction of the Judicial System Statute, § 11–32–3,[2] has never before been construed by this court. The language of our statute is patterned closely after 18 U.S.C. § 1503 the federal Obstruction of Justice Statute which indicates to us that the Legislature intended for this state to follow the federal statu-

---

**2.** General Laws 1956 (1981 Reenactment) § 11–32–3 states:

"Whoever corruptly, maliciously, recklessly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror or officer in or of any court of this state, or officer who may be serving at any examination or other proceeding before any justice, master or other officer of said court, in the discharge of his duty, or injures any party on his person or property on account of his attending or having attended such court or examination before such justice, master or other officer, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such justice, master, or other officer in his person or property on account of the performance of his official duties, or corruptly, maliciously, recklessly or by threats of force, or by any threatening letter or communication, influences, obstructs or impedes, or endeavors to influence, obstruct or impede, the due administration of justice, shall be fined not more than five thousand dollars ($5,000) or imprisoned not more than five (5) years, or both."

tory scheme. That is an important factor in our conclusion because we shall look for guidance to the fairly extensive body of case law that has developed in the federal courts that have interpreted and applied § 1503. And in following that line of cases, we shall join both the District of Columbia and seven other states.[3]

The third clause in the Federal Obstruction of Justice Statute, and of the Rhode Island statute, copied almost verbatim from the federal statute, has become known as the omnibus clause. The Rhode Island statute states a general prohibition against unlawful conduct by anyone who "corruptly, maliciously, recklessly or by threats or force * * * influences, obstructs or impedes, or endeavors to influence, obstruct or impede, the due administration of justice * * * ." Section 11–32–3; *accord* 18 U.S.C. § 1503; *see also* 2 Beale & Bryson, *Grand Jury Law and Practice*, § 11:22 at 83 (1986). It is that clause that pertains to the appeal before us. Although the federal courts have generally construed the omnibus clause broadly, commentators have noted that

"the federal statute appears to be narrower than the Model Penal Code formulation in one important respect: Section 1503 does not apply to the destruction of records if there is no grand jury or judicial proceeding pending at the time of the defendant's conduct. Therefore, unlike under the Model Penal Code and the state statutes that follow it, a defendant cannot be prosecuted at federal law for destroying or concealing documents in anticipation that they will be subpoenaed by a grand jury, if the grand jury that is to conduct that investigation is not yet sitting." 2 Beale & Bryson, § 11:24 at 97 and accompanying footnote 4.

Federal courts interpreting § 1503 have held that "a prerequisite for a conviction of obstruction of justice is the pendency of a judicial proceeding which equates to an 'administration of justice.' " *United States v. McComb,* 744 F.2d 555, 560 (7th Cir. 1984); *United States v. Vesich,* 724 F.2d 451, 454 (5th Cir. 1984). A grand jury proceeding is such a judicial proceeding. *McComb,* 744 F.2d. at 560. No case interpreting § 1503 has ever extended it to conduct that was not aimed at interfering with a pending judicial proceeding. *United States v. Brown,* 688 F.2d 596, 598 (9th Cir. 1982). The obstruction of a government agency's investigation will not trigger an application of § 1503. *Id.* (citing *United States v. Fayer,* 573 F.2d 741, 745 (2d Cir.), *cert. denied,* 439 U.S. 831, 99 S. Ct. 108, 58 L. Ed. 2d 125 (1978)(investigation by Federal Bureau of Investigation not a pending judicial proceeding)). "Thus, for example, the obstruction of an investigation that is being conducted by the FBI or by any similar governmental agency or instrumentality, does not constitute a § 1503 violation because such agencies or instrumentalities are not judicial arms of the government 'administering justice.' " *United States v. Simmons,* 591 F.2d 206, 208 (3d Cir. 1979). *See United States v. Ryan,* 455 F.2d 728 (9th Cir. 1971)(investigation by Internal Revenue Service or any other governmental agency would not constitute a "judicial proceeding," for purposes of obstructing-justice prosecution).

The second essential element, in addition to the requirement that a grand jury proceeding be in process, is that the defendant must be proved to have had a specific intent to impede the grand jury proceeding. *United States v. Petzold,* 788 F.2d 1478, 1485 (11th Cir. 1986). "[T]he government must show that each defendant knew of the pending judicial proceeding and specifically intended to impede its administration." *United States v. Guzzino,* 810 F.2d 687, 696 (7th Cir. 1987); *see also Pettibone v. United States,* 148 U.S. 197, 207, 13 S.

---

3. D.C. Code Ann. § 22–703 (1981); Md. Ann. Code art. 27, § 27 (1988); Miss. Code Ann. § 97–9–55 (1973); Or. Rev. Stat. § 162.235 (1987); Vt. Stat. Ann. tit. 13, § 3015 (1974); Va. Code Ann. § 18.2–460 (1988); W. Va. Code § § 61–5–7, 61–5–27, 61–5A–3, 61–5A–5 (1984); Wyo. Stat. 6–5–305 (1985).

A majority of jurisdictions have followed the formulation in the Model Penal Code. 2 Beale & Bryson, *Grand Jury Law and Practice,* § 11:22 at 81 and accompanying footnotes 1 and 4 (1986). Also *see* A.L.I. Model Penal Code §§ 241.6, 241.7 (Proposed Official Draft 1962).

Ct. 542, 546–47, 37 L. Ed. 419, 424 (1893). With these principles established our examination of defendants' activities must begin April 16, 1985, the date that the grand jury convened, and April 17, 1985, the day during which at some point defendants can be presumed to have had knowledge of the grand jury.

■ The state argues vigorously that all defendants' conduct was part of an ongoing conspiracy. Nevertheless, under the case law, any wrongdoing prior to the date that the grand jury convened would not violate § 11–32–3 because, according to the agreed statement of facts, defendants could not have known of that pending judicial proceeding.

■ The activities of Monaghan and Trench on April 16 and/or 17, 1985, performed at the direction of Pari, in altering RIHMFC records that would be incriminating to Pari might at first glance appear to establish a § 11–32–3 violation. But the statement of facts says only that the alteration of RIHMFC records occurred "on April 16 and/or 17, 1985." The grand jury convened on April 16, 1985, and issued its first subpoena on that day. It is not clear at what time on April 16 Monaghan and Trench actually altered the records and whether, at that time, Pari had notice of the grand-jury investigation and the subpoena. It is not clear from the statement of facts what, if any, wrongdoing occurred on April 17. The statement is lacking sufficient detail about the date and time of the activity described as occurring on April 16 and/or 17, 1985. Although the state was entitled to the benefit of every reasonable inference on the motion to dismiss, those inferences must be reasonable and rational and not conjectural or speculative. *State v. Jenison*, 442 A.2d 866, 875–76 (R.I. 1982). The trial court could not speculate about the time, nor can we. Times and dates are crucial facts.

The statement of facts does not clearly indicate that any wrongdoing occurred after the grand jury convened. The defendants Pari and Manning and other "unindicted co-conspirators" met several times between April 19 and April 28, 1985. The statement of facts indicates only that the meetings were held to discuss the grand jury's investigation and its subpoena and to determine what records had to be provided to the grand jury. According to the statement, defendant Manning expressed the opinion that "all records must be turned over." There is no indication or suggestion that, at these meetings, either defendant acted to withhold or alter evidence.

The procedure followed in this case is an anomaly, as we have said. The trial justice expressly applied the criteria applicable to a motion for judgment of acquittal. On appeal, we will apply the same criteria as we would in a bona fide motion for judgment of acquittal. That is, we will assess the evidence most favorable to the state and decide whether it is sufficient to warrant a jury finding of guilt beyond a reasonable doubt. *State v. Gazerro*, 420 A.2d 816 (R.I. 1980); *State v. McGranahan*, 415 A.2d 1298 (R.I. 1980). The "evidence" in this record is the statement of facts. Having examined it with these criteria in mind, we conclude that the trial justice was justified in ruling that the statement of facts does not meet the state's burden. The facts do not establish when Pari became aware of the convening of the grand jury and what actions, if any, occurred after the grand jury convened. To fill in these gaps in the statement of facts would require speculation. Neither a jury, the trial justice nor this court are permitted to do that.

■ Lastly, the state contends that by turning falsified documents over to the grand jury defendants violated § 11–32–3. The trial justice ruled that the presentation of these records was not an obstruction of justice because the documents were produced in response to a subpoena. In so ruling, he relied upon *United States v. Moon*, 718 F.2d 1210 (2d Cir. 1983), *cert. denied*, 466 U.S. 971, 104 S. Ct. 2344, 80 L. Ed. 2d 818 (1984). In that case the Circuit Court of Appeals reversed a defendant's conviction of a § 1503 violation. It ruled that the falsely backdated documents in question were produced pursuant to a subpoena and there was no evidence of the defendant's "corrupt intent in producing

them." 718 F.2d at 1236. The court also noted that there was no indication that the defendant had "affirmatively vouched for their accuracy." *Id.*

The statement of facts indicates that column 9 of the RIHMFC records was altered at Pari's request. A jury could draw inferences from the surrounding facts and circumstances that Brosco and at least Pari, a coconspirator, would have known that the ledger had been falsified. However, it does not appear from the statement of facts whether Brosco "affirmatively vouched" for the accuracy of the documents. In the absence of such an assertion of the truth of the documents, the act of turning over the records to the grand jury in response to a subpoena that commanded their delivery is not a violation of § 11–32–3.

For these reasons the state's appeal is denied and dismissed, the order dismissing counts 18 and 19 of the indictment is affirmed, and the papers of the case are remanded to the Superior Court.

FAY, C.J., and WEISBERGER, J., did not participate.