STATE

v.

**Walter L. DEMERS.**

**No. 89–86–C.A.**

Supreme Court of Rhode Island.

June 27, 1990.

James E. O'Neil, Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen. and Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Edwin H. Hastings, Tillinghast, Collins & Graham, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case is before the court on the defendant's appeal from a Superior Court conviction of count 3 of Criminal Information P2/86-1520A, obstruction of the judicial system. The defendant, Walter L. Demers (Demers), raises numerous issues on appeal. He asserts that count 3 of information P2/86-1520A is fatally defective for lack of essential averments and that G.L.1956 (1981 Reenactment) § 11-32-3 is applicable to obstruction in criminal proceedings and not in civil proceedings. Demers also asserts that the guardian ad litem is not an officer of the court as required for conviction under § 11-32-3. Next Demers argues that the payment of a legal fee ordered by the court, with or without remonstrance, in a lawyer's office when no proceeding is currently pending does not fall within the scope of § 11-32-3. Demers further alleges that because the evidence presented by the state on the eight counts for which he was acquitted tainted the verdict on count 3, a new trial is required. Accordingly, we advert to a precis of the facts in order to discuss these issues in depth.

During a divorce and custody action in Family Court between Demers and his wife, Demers engaged in conduct with various people that led to his being charged with nine counts, including two felonies, by Criminal Information P2/86-1520A and with one count of a misdemeanor by Criminal Information P3/87-1912A. All counts were consolidated for trial. A jury trial began on September 19, 1988. The jury acquitted Demers on eight counts from Criminal Information P2/86-1520A, and a mistrial was declared in regard to the one misdemeanor count from information P3/87-1912A. Demers was convicted of count 3, obstruction of the judicial system, with respect to the Family Court-appointed guardian ad litem for Demers' minor children. Demers moved for a new trial, which motion was denied on November 7, 1988. On December 14, 1988, he was sentenced to four years at the Adult Correctional Institutions.

Demers alleges that the criminal information is fatally defective for lack of specific averments of essential elements. Count 3 of Criminal Information P2/86-1520A charges Demers as follows:

"That WALTER L. DEMERS, alias Wade Demers, alias John Doe, of Providence County, on or about the 2nd day of December, 1985, at Providence, in the

County of Providence, did corruptly, maliciously, recklessly or by threats or force, endeavor to influence, intimidate and impede [the guardian ad litem], an officer of the Family Court of the State of Rhode Island, in the discharge of her duties, in violation of Section 11–32–3 of General Laws of Rhode Island, 1956, as amended (Reenactment of 1981)."

We have stated that "[t]he language of our [obstruction of the judicial system] statute is patterned closely after 18 U.S.C. § 1503, the federal Obstruction of Justice Statute, which indicates to us that the Legislature intended for this state to follow the federal statutory scheme." *State v. Pari,* 546 A.2d 175, 180–81 (R.I.1988). Section 11–32–3 contains three clauses, any of which a defendant may violate. In *Pari* the defendant was charged with a violation of the third clause, known as the omnibus clause. *Id.*

In this case the applicable clause of § 11–32–3 within which Demers was charged provides:

"Whoever corruptly, maliciously, recklessly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror or officer in or of any court of this state, or officer who may be serving at any examination or other proceeding before any justice, master or other officer of said court, in the discharge of his duty * * * shall be fined not more than five thousand dollars ($5,000) or imprisoned not more than five (5) years, or both." [1]

In determining the essential elements of a charge against a defendant, we look to "the language of the statute setting forth the crime [that] contains all the essential elements of the offense." *State v. Markarian,* 551 A.2d 1178, 1180 (R.I.1988). A charge is sufficient if it "(1) contains the elements of the offense charged, (2) sufficiently informs the accused of the charge that he must defend, and (3) enables the accused to plead a judgment under the indictment as a bar to any future prosecution for the same offense." *State v. Concannon,* 457 A.2d 1350, 1354 (R.I.1983).

After our review of the language of § 11–32–3 and the language of count 3 of Criminal Information P2/86–1520A, we find that the charge contains all the essential elements required by the statute of the offense of obstruction of the judicial system. Moreover, the language of the charge sufficiently informs Demers of the charge that he must defend and enables Demers to plead a judgment under the information as a bar to any future prosecution for the same offense.

■ Demers next alleges that § 11–32–3 is applicable to obstruction in criminal proceedings and not in civil proceedings. He asserts that the charge stemmed from his alleged obstruction of a Family Court-appointed guardian ad litem, which is not a criminal matter. We have stated that "[i]n construing a statute, this court must give the words used therein their plain and ordinary meaning. The statute must be applied literally if the statutory language is clear and unambiguous." *Terrano v. State of Rhode Island, Department of Correc-*

---

1. General Laws 1956 (1981 Reenactment) § 11–32–3 in its entirety states:

"Whoever corruptly, maliciously, recklessly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror or officer in or of any court of this state, or officer who may be serving at any examination or other proceeding before any justice, master or other officer of said court, in the discharge of his duty, or injures any party on his person or property on account of his attending or having attended such court or examination before such justice, master or other officer, or on account of his testifying or having testified to any matter pending there- in, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such justice, master, or other officer in his person or property on account of the performance of his official duties, or corruptly, maliciously, recklessly or by threats or force, or by any threatening letter or communication, influences, obstructs or impedes, or endeavors to influence, obstruct or impede, the due administration of justice, shall be fined not more than five thousand dollars ($5,000) or imprisoned not more than five (5) years, or both."

*tions,* 573 A.2d 1181, 1183 (R.I.1990) (citing *State v. Boss,* 490 A.2d 34, 36 (R.I.1985)). The language of § 11–32–3 clearly and unambiguously states that obstruction of the judicial system shall include an "officer in or of *any* court of this state, or officer who may be serving at *any* examination or other proceeding before *any* justice, master or other officer of said court." (Emphasis added.) We find the language of § 11–32–3 indicates a legislative intention to make § 11–32–3 applicable to both civil and criminal proceedings. Had the General Assembly intended to limit § 11–32–3's application to criminal proceedings, it would have specifically included such language. *See, e.g.,* § 11–32–5, as amended by P.L. 1982, ch. 372, § 1 and § 11–32–6, as amended by P.L.1981, ch. 134, § 1.

■ Demers next asserts that a guardian ad litem is not an "officer of the court" as contemplated by the General Assembly in § 11–32–3. A guardian ad litem was appointed by the Family Court justice as the Demerses' children's lawyer to protect their interests in the pending divorce action between Demers and his wife. When a Family Court justice finds a need for the protection of a child's rights and interests, he or she will appoint a guardian ad litem to act at his or her direction. As such, a guardian ad litem is not merely a lawyer for the child but is a court-appointed officer of the Family Court. Accordingly we find that the guardian ad litem of the Demerses' children was an officer of the court as contemplated by the General Assembly in § 11–32–3.

■ Demers further asserts that there was insufficient evidence to support his conviction. He argues that when he went to the guardian ad litem's office, it was at a time when (1) she was not in court, (2) she was not preparing for a court hearing, and (3) she was not engaged with her assigned clients (his children). She was in her private law office doing unrelated work as an attorney, and therefore, he argues, she could not have been such an officer of the court as contemplated by the statute. As stated above, we look to Federal case law for guidance in interpreting § 11–32–3. In

*United States v. Fernandez,* 837 F.2d 1031 (11th Cir.), *cert. denied,* 488 U.S. 838, 109 S.Ct. 102, 102 L.Ed.2d 78 (1988), the court interpreted the phrase "discharge of his duty" broadly. The court found that a United States attorney was still engaged in the "discharge of his duty" within the meaning of 18 U.S.C. § 1503 when the defendant assaulted him after sentencing. The court concluded that the attorney was still responsible for representing the government in case of an appeal or a motion to reduce sentence.

In the instant case we find that the "discharge of duty" of a guardian ad litem is inherently fluid; the performance of her court-directed responsibilities and obligations are not fixed to a definite time, location, or manner. From the day of her appointment as the Demerses' children's guardian ad litem until the day of the termination of this appointment, she is responsible for the protection of the children's rights and interests. Hence, the guardian ad litem was in the "discharge of [her] duty" when Demers engaged in conduct that led to the charge at issue.

■ Demers contends that his conduct at the guardian ad litem's office did not constitute an endeavor to influence, to intimidate, or to impede as required by § 11–32–3 because he lacked specific intent. " 'Endeavor,' as used in 18 U.S.C. § 1503 (1976), describes any effort or assay to accomplish the evil purpose the statute was enacted to prevent." *United States v. Silverman,* 745 F.2d 1386, 1393 (11th Cir. 1984) (citing *United States v. Russell,* 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553, 555 (1921)). Under 18 U.S.C. § 1503, knowledge and intent are needed to sustain a conviction. *United States v. Haas,* 583 F.2d 216, 220 (5th cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979). The government has to establish that the "defendant should have reasonably forseen that the natural and probable consequence of the success of his scheme would achieve precisely that result." *Silverman,* 745 F.2d at 1393. A jury may infer a defendant's intent from the conduct of the defendant and the surrounding facts

and circumstances of the incident. *United States v. McComb*, 744 F.2d 555, 561 (7th Cir.1984).

The facts and circumstances surrounding the incident that led to count 3 of the information against Demers are as follows. In October 1985, during the divorce proceedings between Demers and his wife, the Family Court justice appointed a guardian ad litem for Demers' minor children. The guardian ad litem testified that between October and December 1985, she received hundreds of telephone calls from Demers and his followers at both her office and her home. Sometimes she would receive these calls at 1, 2, or 3 o'clock in the morning. She testified that these conversations would begin in a low-key manner but would build up to Demers' screaming with fervor into the phone. The guardian ad litem further testified that

> "[Demers] would say that he was the Pastor, the prophet, the preacher, God's annointed one. And that the Bible said that death awaited anyone who interfered or bothered the work of God's annointed one.
> " * * *
> "[H]e would specifically not just say that I was going to pay, he would say 'And your family is going to pay.' I have three small children and this caused me great concern. My husband was going to pay; that my sister who was my law partner, that she was going to pay; that my friends were going to pay and it was quite frightening."

A hearing was held in Family Court on November 1985. Demers was ordered restrained and enjoined from annoying, harassing, bothering, threatening, molesting, or otherwise interfering with the guardian ad litem. The guardian ad litem testified that this order had little effect.

The guardian ad litem further testified that on December 2, 1985, Demers came to her law office "in a very agitated state," looking "disheveled," for the purpose of leaving money in payment of the guardian ad litem's bill, which the court had ordered him to pay. At the office Demers was "mumbling these biblical quotes and he was saying that this was blood money and we were holding his children hostage." Demers came toward the guardian ad litem, she testified,

> "with his hair tossed, screaming these Bible quotes, with his finger in my face, and he had his finger this close to me as I was backing away [indicating].
> "Finally * * * I hit the wall and could retreat no further and I tried to get him to get his hand out of my face and he continued to scream and point at me [indicating] and once again with the Bible quotes * * *, 'You're going to pay for this. You're going to pay for this and your family is going to pay for this.'
> "And as I was up against the wall with the finger in my face and I couldn't get the finger out of my face, I asked him if that was a threat and he said 'That's a promise' [indicating]. At some point during this melee, which went on quite a while, I believe it was my sister who had called the police and they eventually arrived and escorted Mr. Demers out of my office on that date."

Arthur Drummond and Vivian Drummond were members of Demers' group, which called itself Christ Church in Action. Demers was its pastor. Arthur Drummond testified that Demers directed him and other church members to write letters and to make phone calls to people involved in the divorce, including the guardian ad litem. He also directed them what to say and how to go about saying it. Arthur Drummond testified that Demers told him, " 'I want the phones jumping off the hooks, day and night.' " Vivian Drummond testified that Demers "wanted us to put the pressure on them so that they would do what he wanted them to do." Both Arthur and Vivian Drummond testified that Demers took great pride in his actions because they were just a small group and yet they were slowing down the entire judicial system.

Moreover, Demers testified, he asked Lucinda Lubus to accompany him on December 2, 1985, to the guardian ad litem's office "as a witness in case there was foul play."

Our review of the record persuades us that a jury could infer from Demers' conduct on December 2, 1985, and from the surrounding facts and circumstances, that Demers clearly intended, corruptly, maliciously, or recklessly or by threats or force, to intimidate, to influence, or to impede the guardian ad litem in the discharge of her duty. Accordingly we find that Demers' conviction of count 3 of the information was supported by sufficient evidence to prove guilt beyond a reasonable doubt.

■ Demers last argues that the evidence presented by the state on the eight charges for which he was acquitted tainted the verdict on count 3 and that, therefore, a new trial is required. Demers was charged with ten counts of criminal conduct in two informations, which counts were consolidated for trial. All the offenses stemmed from the pending Family Court proceedings for divorce and custody between Demers and his wife. Demers' conduct in response to rulings and developments of the Family Court action was the basis for these charges.

Rule 8(a) of the Superior Court Rules of Criminal Procedure provides:

"Two (2) or more offenses may be charged in the same * * * information * * * if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan."

Although offenses may be properly joined in a single information pursuant to Rule 8(a), a defendant may move for severance for purposes of trial if he can show prejudice that constitutes a denial of his right to a fair trial. *State v. Lassor*, 555 A.2d 339, 345 (R.I.1989); Super.R.Crim.P. 14.

In the instant case the charges against Demers arose out of a common Family Court proceeding. The charges were of similar character, and all constituted parts of Demers' common scheme and plan to manipulate the pending judicial proceedings in Family Court. We find no prejudice to Demers in the consolidation of all

charges against him in one trial. As stated above, there was sufficient evidence produced at trial to support a conviction on count 3. The jury was able to distinguish the required proof for each separate count and find Demers guilty on count 3 only. "This is not a case in which acquittal of one offense amounted to a finding that the elements of another offense could not be proved." *State v. Jette*, 569 A.2d 438, 441 (R.I.1990). Therefore, we find that the jury's verdict on count 3 was not tainted by evidence presented by the state on the other eight charges upon which he was acquitted.

Upon a review of the issues raised by the defendant on appeal and our analysis thereof, we conclude that in the instant case the issues are without merit. Additionally we find that the collateral issues raised by Demers in his brief are likewise without merit.

Hence the defendant's appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.

FAY, C.J., did not participate.